New York, Texas & Mexican Railway Company v. Grant Green.

. Decided December 7, 1896.

1. Depositions—Failure to Answer.

The refusal of the witness to answer a material question in the cross-inter-rogatories is ground for suppressing the deposition on motion. See opinion for cross-question to a medical expert, witness for plaintiff, as to his experience in treatment of a certain class of injuries, which he refused to answer, and for evi-dence making the information asked for material, upon which it was held error to overrule defendant's motion to suppress the deposition. (Pp. 260, 262, 263.)

2. Deposition—Conditional Question.

When cross-interrogatories have been filed and answered, either party may use the deposition, and a party who, by his questions, puts himself in a position to use the answers, cannot object to the use of them by his adversary. Where a question asked in cross-examination seeks further information if the witness shall have given a certain answer to a question in the direct examination, this may be understood as merely directing the attention of the witness to the particular mat-ter, and not as evidencing a purpose on the part of the cross-examiner not to use the answer, unless that given to the direct interrogatory is admitted. The exclu-sion of the answer to the direct interrogatory on his objection will not in such case entitle him to exclude the answer to the cross-interrogatory when offered by his adversary. (Pp. 261, 262.)

3. Proximate Cause—Concurrent Causes.

Where plaintiff alleged defects in a railway track as the cause of the wreck and his injury, he may recover on showing the cause to be such defects, co-operat-ing with the running over stock upon the track. It was sufficient that the negli-gence complained of proximately contributed to the cause of the injury. (Pp. 259, 261, 262.)

4. Same.

The fact that the defective track did not cause the derailment, except as it co-operated with the collision with the stock, does not render the collision the proximate, and the defects of the track a remote, cause of the injury. (Pp. 259, 262.)

Error to Court of Civil Appeals for First District, in an appeal from Jackson County.

The suit was brought by Grant Green, who recovered a judgment against the railway company, from which the latter appealed, and the judgment being affirmed, the company obtained writ of error.

*Proctors*, for plaintiff in error.—The court erred in admitting in evi-dence in plaintiff's behalf the deposition of the witness Dr. Alex. Irvin, over the objection of the defendant, that the witness' answers to defend-ant's cross-interrogatories numbered 3, 5, 7, 29 and 30, were evasive. A deposition should be suppressed when the witness evasively answers a material question propounded on cross-examination, especially when the witness is testifying as an expert and the questions evaded go to the wit-ness' means or opportunity of knowledge. Railway v. Shirley, 54 Texas, 149; Coleman v. Colgate, 69 Texas, 90; Railway v. Crowder, 70 Texas, 224; Lee v. Stowe, 57 Texas, 451; 5 Am. and Eng. Encycl. Law, 597, 598; Weeks Law of Depositions, 367-370. On latitude of cross-examina-tion to test means of knowledge of expert: Brown v. Chenoworth, 51 Texas, 478; 7 Am. and Eng. Encycl. Law, 515.

If in a deposition an objectionable direct interrogatory is addressed to a witness and same is answered, and at the trial upon objection the answer to said direct interrogatory is excluded, then the answer to a cross-interrogatory, which cross-interrogatory on its face purports to be asked in consequence of said direct interrogatory and is dependent upon it, can not be read in evidence over the objection of the party propounding said cross-interrogatory.    Alsop v. Ins. Co., 1 Sumner (U. S.), 451.

Appellee's pleadings are, a bad track was sole cause of this injury.    His case, if any, from the proof is, a calf being struck on the track, combining with a bad track, caused this injury.    Morris v. Kasling, 79 Texas, 145; Railway v. Hennessey, 75 Texas, 158; Cooper v. Loughlin, 75 Texas, 527.

The fact that after derailment railway ties and road-bed were not strong enough to support an engine and train running rapidly is no evidence of negligence, and the court should properly so inform the jury and instruct a verdict.    Ward v. Bonner, 80 Texas, 168; Manson v. Eddy, 3 Texas Civ. App., 148; Sweeney v. Railway, 8 Am. and Eng. Ry. Cases, 151.

*J. D. Owens, R. A. Alexander* and *Jno. H. Bailey,* for defendant in error.—A deposition should not be suppressed unless the answers of the witness, when taken as a whole, show an evident intention of evading the questions.    And if the testimony of the witness Irving was admitted erroneously it is no cause for a reversal of this cause, because said testimony is immaterial to any issue raised in this case.    79 Texas, 9; 78 Texas, 293.

Appellant cannot complain of facts unfavorable to his cause brought out by himself on cross-examination and in response to his own question. Smith v. Oldham, 26 Texas, 536; Railway v. Cockrill, 72 Texas, 619.

Plaintiff in an action of damages caused by the alleged negligence of defendant is only required to allege the facts which show the negligence of the defendant and the approximate cause of the injury, and is not required to allege facts which defendants may claim show that the alleged negligence of defendant was not the proximate cause of the damage.    Railway v. Durrett, 57 Texas, 53; Railway v. Smith, 74 Texas, 276; Railway v. Easton, 2 Texas Civ. App., 381; Railway v. Cowser, 57 Texas, 302; Railway v. Murphy, 46 Texas, 362.

What is the proximate cause of an injury is always a question of fact to be submitted to the jury under proper instructions, and when so submitted their verdict supported by competent evidence will not be disturbed on appeal.    Gonzales v. Galveston, 84 Texas, 3; Johnson v. Railway, 2 Texas Civ. App., 142; Railway v. Sweeny, 6 Texas Civ. App., 173; Jones v. George, 61 Texas, 353.

By proximate cause is meant such an act wanting in ordinary care as actively aided in producing the injury as a direct and existing cause. It need not necessarily be the last or sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result under the attending circumstances.    Gonzales v. Galveston, 84 Texas, 1; Railway v. Wilson, 3 Texas Civ. App., 583; Railway

v. Sweeny, 6 Texas Civ. App., 173; Eames v. Railway, 63 Texas, 664; Jones v. George, 61 Texas, 353.

GAINES, Chief Justice.—The following is taken from the statement of the case which accompanies the opinion of the Court of Civil Appeals:

"This suit was brought by appellee to recover damages for injuries sustained by him in the wreck of an engine and train belonging to appellant, upon which he was the engineer in appellant's service. The petition charged that the wreck was caused by the negligence of appellant in allowing its road to be in a defective condition in that the width of the road-bed or dump was not sufficient to support trains, the rails were worn out and worthless, the cross-ties were rotten, and there was no ballast under the ends of them. The petition further alleged that the road was defective and unsafe, because it was unfenced and open to trespass by cattle, but did not allege that this helped to cause the wreck. The petition alleged injuries both temporary and permanent.

"A special exception was sustained to the allegation of the unfenced condition of the track, and no amendment was made. After the evidence was in plaintiff withdrew all claim for permanent injuries.

"The evidence showed that plaintiff was operating an engine, to which were attached stock cars, traveling westward over defendant's road, and that it struck a calf and was derailed, thereby inflicting injuries which damaged plaintiff to the amount of $4000, found by the jury. The plaintiff sought to prove that the track was in bad condition in the respects alleged in the petition, and that this was either the sole cause of the derailment of the engine, or that it was one of the causes co-operating with the presence of the calf on the track and contributing to the result. The defendant sought to show that the track was in good condition; that, if its condition was bad at any point, it was not so at the point of derailment, and that hence the collision with the calf was the sole cause of the accident. As to the condition of the road in the neighborhood of the point where the engine left the track there was a conflict of evidence. There was sufficient evidence to authorize the jury to conclude that the earth dump supporting the cross-ties was too narrow for the purpose; that the earth had been washed from under the ends of the ties and they were left without sufficient support; and that many of the ties were rotten; and that this condition was known to the defendant or ought to have been discovered with ordinary care and remedied before the accident. But appellant contends that, though this be true, still the evidence of plaintiff fails to show that the track was defective at the point where the engine left it, and that the uncontradicted evidence offered by defendant shows that the track was perfect where the derailment occurred, but that the animal became fastened under the pilot and that this was the sole cause of the wreck. Several witnesses for appellant testified that they visited the scene of the wreck after it occurred and examined the track; that at the point where the engine left the rails the track was in perfect state, the ties and rails all remaining in their proper posi-

tion, and that the engine had run some distance over the cross-ties, after leaving the rails, before the track was torn up.   These witnesses ascertained the point at which the engine ran off the rails by the marks on the ties, which they say they were able to distinguish from those made by wheels of cars, which also quit the rails, by the difference in depth, resulting from the greater weight of the engine.   But they say the marks of the engine wheels were on the northern ends of the ties outside the rails.   Some of them swore positively that these impressions were those of the engine wheels while others would only give their opinion to that effect.   The fireman, who was on the engine with plaintiff, testifies that he was looking at the wheels of the engine when they quit the rails; that, when the calf was struck, it was caught and carried under the pilot, and was being pressed against the north rail when it sprung outwards, letting the wheels of the engine upon the ties inside the rails.   If his statement is true the witnesses for defendant are mistaken in their opinion that the impressions seen by them on the outside of the rails were those left by the engine when it was derailed.   Other testimony offered by plaintiff showed that quite a number of the ties were broken both at the ends and in the middle, and that of these some were rotten.   From this the jury were authorized to conclude that the condition of the track described by the witnesses and stated above existed at the point where the calf was struck, and that this condition helped to bring about the derailment of the train.

"Defendant in due time and in proper manner moved to suppress the deposition of Dr. William Irvin, on the ground that he had evaded and had not answered some of the cross-interrogatories.   The motion was overruled and the exception duly taken.   These crosses and the answers thereto are as follows:

" 'Cross-interrogatory 3:   How many cases of injury from railway accidents had you treated previous to this case of Green's?

" 'Answer to cross-interrogatory 3:   I am not prepared to state, not having kept any record of them.

" 'Cross-interrogatory 5:   Is it not true that you had never treated any case of railway injury, save injury to one S. C. Abbott, who had his fingers mashed, previous to your treatment of Green?   If you answer in the negative, please name the cases.

" 'Answer to cross-interrogatory 5:   I have treated cases of railway injury prior to Abbott's and Green's cases, the mentioning of which can be of no possible interest to you or value to your case.

" 'Cross-interrogatory 7:   When is the last time you have been in any hospital or place where you could observe the treatment of railway injury cases by others?   If you answer, then say if you were at said hospital as an attendant, physician, or student, and how long you remained there.

" 'Answer to cross-interrogatory 7:   My first experience in hospital was that of a student of medicine, extending from 1858 to 1861.   My last was at times during the late civil war, as a physician.'

"The fireman Edmunds, whose testimony is above referred to, testified by deposition. Direct interrogatory No. 5 and the answer thereto were as follows: 'Did the rails of the track spread before the engine derailed? Did you see the wheels of the engine when they left the track, and was there anything under them at that time to cause them to be derailed?' Answer: 'The rails spread before the engine left the track and caused it to become derailed. I saw the two right front truck wheels and the right front driving-wheel leave the rail. There was nothing under them until after leaving the rail. The right front truck wheel touched but a very small portion of the calf if any after leaving the rail. The right front back wheel and right front driving-wheel ran over the calf while on the ties.' On motion of the defendant, made in due time and manner, this interrogatory and answer were suppressed on the ground that the question was leading. Cross-interrogatory 14 and the answer to same were as follows: 'In a subdivision of direct interrogatory 5 you are asked if you saw the wheels of the engine when they left track and if there was anything under them at that time to cause them to become derailed. If you answer this subdivision and say there was nothing under the engine wheels when they left the track to cause them to become derailed, please say now, if there was not the yearling then under the pilot and if this was not exerting a great pressure against the rail, pressing it outward, and did not this cause a strain likewise on the opposite rail?' Answer: 'I saw the wheels of the engine when they left the track, and there was nothing under them to cause them to be derailed. The yearling was then under the pilot, causing the amount of pressure put against the side of the right rail to be sufficient to mash the body of an eight or nine months-old calf. I should judge that the pressure on the opposite lead wheel was light, hence the pressure on the rails was light.' Defendant moved to suppress them also, on the ground that the cross-interrogatory was based upon the hypothesis that the direct interrogatory 5 was properly framed and had been answered by the witness, whereas that question and its answer had been suppressed and the answer to the cross-interrogatory fell with it. Over this objection plaintiff was permitted to read the answer and exception was reserved."

The plaintiff having recovered a judgment in the trial court, and the Court of Civil Appeals having affirmed that judgment, the appellant has brought the case to this court by writ of error. The grounds of error specified in the petition for the writ, in substance question the rulings of the latter court in the following particulars:

1.   In holding that the trial court did not err in overruling the motion to suppress the deposition of Dr. Irvin.

2.   In holding that there was no error in refusing to exclude the answer of the witness Edmunds in response to the 14th cross-interrogatory propounded to him.

3.   In not holding that since the plaintiff in his petition complained only of the defect in the track and since the evidence showed that such

defect was not the sole cause of the derailment, the plaintiff was not entitled to recover.

4. In not holding that the presence of the yearling on the track was the proximate, and the defect in the track, if any, was the remote cause of the injury.

We think that with the exception of the first, the Court of Civil Appeals correctly disposed of all the questions here presented; and we need only refer to their opinion in support of our conclusions upon those points.

But we are of opinion that there was error in holding that the deposition of Dr. Irvin should not have been suppressed. The answer to the fifth cross-interrogatory is clearly evasive; in fact, the witness, without saying that he has forgotten the names of the persons he has treated, declines to give them. In view of this, it is not clear to our minds that there was not a purpose of evasion in the answers to the third and fifth cross-interrogatories also. Though, upon first blush, the matters inquired about in the interrogatories in question may seem trivial, after a careful consideration we are unable to concur in the holding that full answers were unimportant. It is true that upon the trial the plaintiff abandoned his claim for damages for permanent injuries; but he still sought to recover for continued physical and mental sufferings and for pecuniary loss resulting from inability to labor, by reason of his injuries,—up to the time of the trial. He testified upon the trial, that he had suffered and continued to suffer bodily and mentally, and that he had been unable to labor, especially in his business as a locomotive engineer, since the accident.

"Dr. Alex. Irvin, a practicing physician, then testified by deposition for appellee, in substance: That he treated appellee for the injuries received by him in said wreck; that appellee had been thereby incapacitated for the performance of labor as engineer up to the time of trial; that appellee's condition at time of trial was impairment of general health, strength, and powers of locomotion." On the contrary, "Dr. J. H. Reuss, a practicing physician, testified for appellant: That he also treated appellee for the injuries received in said wreck; that he was called to see appellee the same evening of the accident; that he found him suffering from scalds and from no other disease; that his treatment of appellee covered a period of two weeks immediately after this accident; that at the end of this time appellee's scalds had healed, he discharged appellee as fully recovered, and as needing no further medical attention; and that his opinion was that plaintiff's condition was not such as detailed by Irvin, and that plaintiff needed no medical attention." The foregoing extracts are taken from appellant's brief in the Court of Civil Appeals, which is admitted in appellee's brief to be correct upon these points. Thus it is seen, that Dr. Irvin became a very material witness for the plaintiff. The probative force of his testimony depended,—first, upon his credibility, and secondly, upon the value of his opinion. The latter was also dependent, to a great extent, upon his experience in the treatment of injuries such as the plaintiff had suffered. In many cases the

symptoms of disease are so confusing and perplexing that physicians of the greatest skill and experience frankly confess that their opinions are entitled to but little weight; and even when the lights are less obscure, an opinion by one of but little learning and practice may be of less value. Hence it is important to the party against whom the opinion is offered to be permitted to show, if he can, that the witness, though competent as an expert, has had but slight experience, and thereby to depreciate the value of his opinion. A method of doing this is by cross-examination; and probably but few occasions arise when this test of truth is more valuable than in the examination of a witness who is offered as an expert. Here the defendant, by its cross-interrogatories sought to show the extent of Dr. Irvin's experience by asking him, in effect, if it was not true that he had never treated any cases of the character of that in question, except one Grant's, and in the event of a negative answer, to give the names of the person so treated. He was clearly entitled to an answer giving the names or stating that they had been forgotten.

A refusal to answer a material question propounded in a cross-interrogatory is fatal to the deposition, unless it should appear that the answer could have been of no benefit to the party propounding the question. Railway v. Shirley, 54 Texas, 125; Lee v. Stowe, 57 Texas, 451; Coleman v. Colgate, 69 Texas, 88; Railway v. Crowder, 70 Texas, 222. In the case first cited (Railway v. Shirley) the court in their opinion say: "On the trial appellant objected orally to the depositions of Brown and Boyce, filed on the day the trial commenced, that they had each failed to answer certain cross-interrogatories propounded to them, or had answered them evasively. The court in signing the bill of exceptions explains that the defendants were informed that the court would entertain objections to particular interrogatories, the crosses to which had not been properly answered. The authorities are that the omission to answer, or the refusal to answer, is fatal to the entire deposition. Our opinion is that the objection, if well founded, was fatal to the entire deposition, and we are unable to see that there was such an amount of other testimony to the same effect as to show that the erroneous admission was an immaterial error." And again in their opinion on the motion for a rehearing, they say: "In regard to the depositions of Brown and Boyce, we adhere to our opinion that they should have been excluded. They were giving their opinion, as contractors and builders, of the cost of clearing, track laying, and other work, and it was the right of defendant to have them answer interrogatories calculated to show the extent of their experience and knowledge and the value of their opinions or estimates. The refusal to answer a material question should not be allowed by the officer taking the depositions, and the mere neglect to answer may prove as injurious to the party questioning.

"It is not believed that the authorities require the exclusion of depositions in all cases where the witness has failed to answer every question. Much must be left to the discretion of the court. The rule should not be allowed to be presented to obstruct or retard trials, or to exclude

depositions because of a manifest casual failure to answer some unimportant question."

The present is not a case of a casual failure to answer a question. The witness constituted himself the judge of the materiality of the testimony sought to be elicited and refused to answer. We have examined the original transcript in the Shirley case, and find that the testimony of which the defendant was deprived in that case was no more material or important than that which was sought to be brought out in this, and which the witness refused to give.

As previously intimated, we find no other error in the rulings of the Court of Civil Appeals; but for that here pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*