ROTGE v. SIMMLER et al. (No. 5456.)

(Court of Civil Appeals of Texas. San Antonio. April 21, 1915. Rehearing Denied May 19, 1915.)

1. DEPOSITIONS ⬤⟿83 — SUPPRESSION — EVIDENCE.

A party cannot be deprived of his right to have cross-interrogatories answered because the failure to answer them resulted from the negligence of the officer who took the deposition; and hence a notary's testimony that deponent willingly answered all questions, and that, if

any were not wholly answered, the failure was due to his own inadvertence, was inadmissible.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. ☞83.]

2. DEPOSITIONS ☞83—SUPPRESSION—DISCRETION OF TRIAL COURT.

Rev. St. 1911, art. 3676, requires motions to suppress depositions to be disposed of before trial. Plaintiff filed his deposition May 2, 1912, and, on defendant's motion, the trial court on May 8th indicated his opinion that the deposition should be suppressed on the ground that deponent had not answered defendant's cross-interrogatory as to whether plaintiff told a codefendant to erect a board fence in the rear premises of defendant's property at the place where it was erected, and as to whether such third person complied with plaintiff's request and with deponent's instruction, but at plaintiff's request the matter was postponed from term to term, and on February 20, 1914, after the evidence on which the case was tried had been introduced, and after deponent's death, the motion to suppress was granted, and an order was entered nunc pro tunc as of May 8th. The answer sought would have aided defendant, though such answer was contradicted by other witnesses. *Held*, that the suppression of such deposition was not an abuse of the trial court's discretion.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. ☞83.]

3. ADVERSE POSSESSION ☞114—FINDINGS—SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence *held* sufficient to support a finding that defendants had open, continuous, and adverse possession of the land claimed by them in their cross-bill for ten consecutive years prior to December 14, 1910, and lying between the plaintiff's building or wall and a line parallel with such building 101 feet back from the street, being the present fence line, as against the objection that the evidence did not support defendants' claim that they had inclosed the land with brick walls, in that it did not show where such brick walls were located or what ground they inclosed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. ☞114.]

4. ADVERSE POSSESSION ☞117—FINDINGS—CONSTRUCTION.

In trespass to try title, with a cross-bill setting up a title by adverse possession, findings that plaintiff and those under whom he claimed had not had open and adverse possession of the tract of land lying between plaintiff's building and an existing board fence did not conflict with findings that defendants had had possession of the land sued for in their cross-bill filed March, 1912, from the year 1876 to 1902, since the latter finding could not be construed as a finding that, after defendant's exclusive possession in 1902, plaintiff had such possession for ten years as to create a title by limitation, where the evidence did not show ten years intervening between the plaintiff's erection of the fence and the filing of defendant's cross-action or plaintiff's adverse possession during such time.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. ☞117.]

5. STIPULATIONS ☞18—CONSTRUCTION—ADMISSIONS.

In such action an agreement that plaintiff had a record title to one lot and defendant a record title to another lot, reserving the right to prove limitation to any property belonging to the other and to introduce such instruments as might be necessary therefor, did not have the effect of an admission that plaintiff had title by a regular chain from the sovereignty of soil,

as a record title might be one derived from the common source.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 41–54; Dec. Dig. ☞18.]

6. APPEAL AND ERROR ☞499 — OBJECTIONS AND EXCEPTIONS—SUFFICIENCY.

Bills of exceptions, failing to show that requested special charges were presented, that objections to the submission of the issues were made at the proper time, or that the rulings thereon were excepted to at the proper time, were insufficient as a basis for assignments of error in the refusal of such charges.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. ☞499.]

7. APPEAL AND ERROR ☞742—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error in that all the findings of the jury were contrary to the evidence was too general, where no propositions were submitted thereunder and it was not followed by a statement, and would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Trespass to try title by J. P. Rotge against E. Simmler, Mary Simmler, and another, in which the named defendants filed a cross-bill. Judgment for defendants on the bill and cross-bill, and plaintiff appeals. Affirmed.

E. P. & Otis K. Hamblen, of Houston, for appellant. M. G. Fakes and Hutcheson & Hutcheson, all of Houston, for appellees.

MOURSUND, J. Appellant, J. P. Rotge, sued appellees, Elizabeth Simmler, Mary Simmler, and T. B. Okasaki, in form of trespass to try title, seeking to recover, as a part of lot No. 11 in block No. 44 in the city of Houston, a certain strip of land about 51 feet long and 8 inches wide; said parcel being described with reference to a certain fence located on the ground, and it being further alleged that the roof of a building erected in part on said strip of land extended over on petitioner's land to the extent of 10 inches beyond the said 8-inch strip of land. In addition to his record title, plaintiff relied upon and pleaded that he had acquired title to said strip by the 3, 5, and 10 years' statutes of limitation.

Defendants Elizabeth and Mary Simmler pleaded not guilty, and also pleaded the statutes of limitation of 3, 5, and 10 years. By a cross-bill, they sought to recover several parcels of land, but, prior to submitting the case to the jury, dismissed as to all except one, 50 feet in length by about 2½ or 3 feet in width, out of lot No. 11, adjoining lot No. 9, to which they claimed title by limitation of 3, 5, and 10 years. Plaintiff answered this cross-bill by plea of not guilty, and alleged ownership of the parcel therein sued for, not only by record title, but by limitation of 3, 5, and 10 years. Defendant Okasaki answered plaintiff's petition by plea of not guilty.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The case was submitted to the jury upon special issues, which, with the answers thereto, are as follows:

Issue No. 1: "How far from Travis street is the true and correct boundary line located dividing lots 9 and 11? You will answer this question, 'We, the jury, find the true dividing line is ———— from Travis street,' filling in the blank distance from Travis street."

Answer: "1. We, the jury, find the true dividing line is 101 feet from Travis street."

Issue No. 2: "Did the plaintiff in this case, J. P. Rotge, and those under whom he claims, have open, continuous, adverse, hostile, exclusive, and notorious possession of the said strip sued for by him, as stated above, for any uninterrupted period of 10 consecutive years prior to December 14, 1910, claiming and using the same during that time? Answer 'Yes' or 'No.'"

Answer: "2. No."

Issue No. 3: "If you have answered the next preceding issue in the affirmative, and only in that event, you will answer the following question: During what period of time did he and those under whom he claims maintain such possession; that is, from what year to what year?"

Answer: "3. ————."

Issue No. 4: "Did the defendants in this case, and those under whom they claim, have open, continuous, adverse, hostile, exclusive, and notorious possession of the said strip of land sued for by plaintiff, J. P. Rotge, as above described, for any uninterrupted period of 10 consecutive years prior to December 14, 1910, claiming and using the same during that time? Answer 'Yes' or 'No.'"

Answer: "4. Yes."

Issue No. 5: "If you have answered the next preceding issue in the affirmative, then, and only in that event, answer the following question: During what period of time did the defendants and those under whom they claim maintain such possession; that is, from what year to what year?"

Answer: "5. From 1867 to 1902."

Issue No. 6: "In regard to the claim of the defendants on their cross-bill, you will answer the following question: Did the defendants in this case, and those under whom they claim, have open, continuous, adverse, hostile, exclusive, and notorious possession of that tract of land claimed by them in their cross-bill for any uninterrupted period of 10 consecutive years prior to December 14, 1910, claiming and using the same during said time, which said land claimed by them is fifty feet more or less in width, described as follows: Lying between the Rotge building or wall and a line parallel with said building 101 feet back from Travis street, being the present fence line? Answer 'Yes' or 'No.'"

Answer: "6. Yes."

Issue No. 7: "If you have answered the next preceding issue in the affirmative, then, and only in that event, you will answer the following question: During what period of time did they and those under whom they claim maintain such possession; that is, from what year to what year?"

Answer: "7. From 1867 to 1902."

Issue No. 8: "If you have answered issue No. 6 in the affirmative, then state whether or not the plaintiff, J. P. Rotge, or those under whom he claims, being Mrs. Rotge, formerly Mrs. Marks, in person or through tenants, have had open, continuous, adverse, hostile, exclusive and notorious possession, and paying all taxes thereon as they accrued, of that tract of land lying between the Rotge building and the present board fence? Answer this question 'Yes' or 'No.'"

Answer: "8. No."

Issue No. 9: "If you have answered issue No. 8 in the affirmative, then state between what years the plaintiff has had such possession; that is, from what year to what year."

Answer: "9. ————."

Judgment was entered that plaintiff take nothing by his suit, and that defendants' title be quieted to the strip of land sued for by plaintiff; that defendants Elizabeth and Mary Simmler recover of plaintiff the strip of land 50 feet long and about 2½ or 3 feet wide, lying between lot No. 9 and a building erected upon lot No. 11.

By the first assignment appellant complains of the suppression of the deposition of the witness Simon Roos, stating in the assignment that such action was taken by the court because the witness had failed to answer cross-interrogatory No. 11, propounded to him by the defendants. It is not clear from the order of the court whether the motion to suppress was sustained upon that ground alone, or because of the failure of the witness to clearly and specifically answer other interrogatories, as well as his failure to answer cross-interrogatory No. 11. However, the bill of exceptions recites that the court sustained the motion on the ground that the witness failed to answer cross-interrogatory No. 11. Appellant contends that it was clearly shown to the court that the witness had not willfully refused to answer the question; that the witness had died since his deposition was taken, and his evidence on other matters was very material to the plaintiff; also that, if the witness had answered the question, his answer would have been wholly immaterial to any issue raised in the case. The deposition of the witness Roos was filed on May 2, 1912. The motion to suppress was filed on May 7, 1912. The motion was argued on May 8, 1912, whereupon the court announced his opinion that the deposition should be suppressed, but, at the request of counsel for plaintiff, the matter was taken under advisement for the purpose of giving said counsel time in which to produce authorities, and by agreement, without prejudice to the rights of defendants, the decision of the motion was postponed from term to term. Plaintiff's counsel did not produce his authorities until February 20, 1914, on which date the motion to suppress was granted, and an order to that effect was entered nunc pro tunc as of May 8, 1912. The bill of exceptions discloses that, at the time the ruling was finally made, the other evidence had been introduced, and that at such time Simon Roos was dead, but the date of his death was not shown.

[1] The bill of exceptions also shows that the notary public who took the deposition would have testified, had he been permitted to do so, that Roos willingly answered all questions, and, if any were not fully answered, such failure to answer was caused by the inadvertence of the notary public.

That portion of the eleventh cross-interrogatory, which the witness failed to answer, related to a material matter, and it is apparent that the witness avoided the question, or else the notary was guilty of negligence in failing to take down the answer. We do not understand that a party can be deprived of his right to have cross-interrogatories answered because the failure to answer same resulted from negligence of the officer who took the deposition. The result to the litigant is the same whether the witness deliberately refused to answer or the notary failed to ask the question or to reduce to writing the answer thereto. We therefore agree with the trial judge in his conclusion that the testimony of the notary, to the effect that the failure to answer the question was caused by his inadvertence, was immaterial upon the issue, whether this deposition should be suppressed.

[2] Had the court sustained the motion to suppress when it was first considered, there could be no doubt that, in testing the correctness of his ruling, reference would only be had to the pleadings, the interrogatories, and the answers thereto, for it is clearly contemplated that such motions will be disposed of prior to the trial. Article 3676, R. S. 1911. While the court adjudges that the order should be entered nunc pro tunc as of May 8, 1912, the order itself shows that the decision upon the motion was not made on May 8, 1912, but was postponed from term to term by agreement, without prejudice to defendants' rights. The decision was actually rendered on February 20, 1914, after the evidence upon which the case was tried had been introduced. If postponement without prejudice means that defendants would have the right to have the motion determined upon the conditions existing on May 8, 1912, the evidence given upon the trial cannot be considered in testing the correctness of the court's ruling. But, conceding that the evidence may be considered, we do not find that it shows the answer of the witness would have been of no benefit to defendants. The portion of interrogatory No. 11 not answered reads as follows:

"Is it not a fact that Mr. Rotge told Mr. Okasaki to erect a board fence in the rear premises of the Simmler property at the very point where same is now erected, and that Mr. Okasaki complied with Mr. Rotge's request, and did you not likewise instruct Mr. Okasaki?"

Rotge testified that he was to show Okasaki the line on a certain day, and when he got there the fence was already erected. Okasaki testified he did not know Simon Roos; that he never saw him to know him; and that Roos did not tell him to put the fence where he put it. Okasaki is a Japanese, and his testimony lacks very much of being clear, but, as we construe it, he contended that Rotge told him that he (Rotge) owned 18 inches of ground adjoining his building, and was very angry because the old fence had been torn down; that Okasaki told Rotge he (Okasaki) did not care for 18 or 20 inches of the ground he had rented, and, if Rotge wanted a fence, Okasaki would make it; that he did erect a board fence about 18 inches from the Rotge building; that Rotge told him he owned 24 inches, and insisted the fence should be moved, so Okasaki had the boards taken off of the side of the posts next to Rotge's building and placed upon the other side of the posts, which made the difference of 6 inches; that this satisfied Rotge, except that he complained of the roof of a shed extending 4 inches onto his land, which he asked Okasaki to cut off, and this was done. This testimony is in effect that Rotge did tell Okasaki to put the fence where it was in fact placed, and raises no inference that Simon Roos would necessarily have answered that he did not hear Rotge tell Okasaki to build the fence at the place where Okasaki placed it. The fact that Okasaki denied knowing Roos does not conclusively show that Roos was not within hearing distance at one or more of the conferences between Rotge and Okasaki. Appellant's contention, when analyzed, means that, if other witnesses give testimony which is contradictory of or inconsistent with the answer desired by the party interrogating the witness, his failure to answer the cross-interrogatory will be presumed not to be prejudicial. This contention cannot be sustained. One witness may forget a conversation, while another remembers it; witnesses frequently give inconsistent testimony. It cannot be said that a trial judge abused his discretion in failing to assume that a witness would have answered a cross-interrogatory unfavorably to the party propounding it, under the circumstances shown in this case. The fact that Simon Roos was dead at the time of the trial may be a circumstance which the court can properly consider in exercising his discretion, but, if so, it cannot be given much weight when it is not made to appear that appellant did not have ample time to retake the depositions before the death of the witness; it appearing that the court, a few days after the depositions were taken, expressed the opinion that the motion to suppress should be sustained, and only refrained from entering his order to that effect at the request of appellant. We conclude that the court did not abuse his discretion in sustaining the motion to suppress the depositions, and therefore overrule the first assignment of error. Railway Co. v. Green, 90 Tex. 257, 263, 38 S. W. 31; Morris & Co. v. Shoe Co., 44 Tex. Civ. App. 488, 99 S. W. 178.

By the second assignment it is contended that the answer to the second special issue is contrary to the preponderance of the evidence to such an extent as to show that manifest injustice has been done. We find that the evidence was sharply conflicting upon this issue, and that it amply supports the finding of the jury.

The third and fourth assignments relate to the answers to special issues Nos. 4 and 6, whereby it was found that defendants had limitation title to the strip of land sued for by plaintiff, and also the strip sued for by defendants in their cross-bill. In so far as the strip sued for by plaintiff is concerned, the question of defendants' limitation title is immaterial, for by answer to special issue No. 1 the jury found, and such finding is not attacked, that said strip is a part of lot 9, to which defendants have record title, and by answer to special issue No. 2 it is determined that plaintiff has not acquired title thereto by limitation.

[3] The findings in answer to special issue No. 6 are attacked in the assignment of error only upon the grounds stated in the following portion of such assignment:

"The said findings of the jury were wholly unsupported by the evidence in this: That the defendants and their witnesses claimed that the defendants and those under whom they claim had inclosed said land by solid brick walls, but the testimony of the two defendants Simmler, as well as their witnesses, were unable to state just where the said brick wall was located or what part of the ground sued for in the cross-bill was inclosed by said brick walls, or how long said brick walls were maintained, and when and by whom they were removed, and the evidence of the said defendants and their witnesses was conflicting among themselves, whereas the evidence of the plaintiff and numerous witnesses introduced in his behalf showed that during all of said time said land was in possession of the plaintiff and those under whom he claims. * * * *"

These grounds are urged in the first proposition under such assignment. There is evidence to the effect that the defendants Simmler and those under whom they held had, for many years an inclosure extending behind the building on lot No. 9, which inclosure was formed by a solid brick wall, and that the rear wall was at least as far back as the wall of Rotge's building, and was torn down in erecting such building or incorporated into the wall thereof; that there was no way to get into such inclosure, except by passing through the Simmler building; and that such brick wall inclosure existed for more than ten years. This testimony definitely locates the land held, used, and claimed by the Simmlers as that contained within such inclosure, and its description corresponds with that of the parcel sued for in the cross-bill. This testimony is directly and positively contradicted by plaintiff and his witnesses, but it cannot be said that the findings of the jury in answer to said special issue 6 are without evidence to support them, as is contended in this assignment of error, and we therefore overrule the assignments.

[4, 5] By the fifth assignment it is contended that the findings of the jury in response to issue No. 8 are in conflict with the undisputed evidence. Appellant's contention is that the jury having found that defendants had possession of the strip sued for in the cross-bill from the year 1876 to the year 1902, and the cross-bill having been filed on March 6, 1912, it follows that plaintiff had possession for more than ten years; also that the evidence is uncontradicted to the effect that plaintiff paid all taxes upon lot No. 11 since 1895. It is true that the jury did not find that defendants, after the year 1902, had such possession of the strip as was inquired about, but that finding cannot be given the effect of a finding that, after defendants' exclusive possession ceased, plaintiff had such possession as is required to create a limitation title. The jury may have concluded that after 1902 neither party had such possession as is required under our limitation statutes. The evidence is insufficient to support a finding in favor of plaintiff for said strip under the three, five, or ten years' statutes of limitation, and it is therefore profitless to inquire whether plaintiff held the character of possession mentioned in the issue for a period of time which would be of no avail to him in acquiring title by limitation. Plaintiff did not show title or color of title from or under the sovereignty of the soil. An agreement was made that he had a record title to lot 11, and defendants to lot 9, but both parties reserved the right to prove limitation to any property belonging to the other and to introduce such instruments as might be necessary for that purpose. A record title might be one derived from a common source, and we do not think the agreement can be given the effect of an admission that plaintiff has title by a regular chain from the sovereignty of the soil. If the agreement be construed as an admission that plaintiff's title is shown by instruments duly recorded, the fact remains that there is no evidence to show when they were recorded, and therefore the five years' statute cannot be invoked. The evidence of plaintiff shows that some time in the year 1902 he erected a fence inclosing the strip of land, and that in the year 1910 Okasaki took down the fence, and it is not shown how long it remained down, but when Rotge returned from Colorado he insisted that Okasaki should put up a fence, and this demand was complied with, but the roof of a building was constructed by Okasaki so as to protrude over said strip of land to the extent of eight inches. The cross-action was filed in March, 1912. This evidence does not show that ten years intervened between the erection of the fence by plaintiff and the filing of the cross-action, nor does it show peaceable and adverse possession during the time so intervening. Appellant contends that defendants' possession was found by the jury to extend only to the year 1902, and to exclude the idea that such possession covered any portion of said year; but it is evident that the questions known as issues Nos. 5 and 7 called for the jury to find in what year the possession began and in what year it ended, and the jury doubtless fixed the time when plaintiff built the fence as the ending

of the period of defendants' possession. We conclude that the assignment should be overruled.

[6] By the sixth assignment the refusal of the court to give two special charges is complained of, while the seventh is based upon the overruling of objections to the submission of special issues Nos. 4 and 6 without submitting the said two special charges. The bills of exception fail to show that the charges were presented, and the objections to the submission of the issues made, at the proper time, and also fail to show that the rulings of the court thereon were excepted to at the proper time. The bills of exception are insufficient to base assignments of error upon, and are therefore overruled. Connor v. Uvalde Bank, 172 S. W. 175.

[7] The eighth assignment complains generally that all the findings of the jury are contrary to the evidence. The assignment is too general, and no propositions are submitted thereunder; nor is it followed by a statement. It will not be considered.

The judgment is affirmed.