GUSSIE JEGENDORF,

*Plaintiff and Respondent,*

v.

ABE JEGENDORF,

*Defendant and Appellant.*

(No. 2297; March 27th, 1945; 157 Pac. 2d 280)

278

For the plaintiff and respondent the cause was submitted on the brief and also oral argument of Ray E. Lee of Cheyenne, Wyoming.

For the defendant and appellant the cause was submitted on the brief of Albert W. Richman of New York City, New York ,and Carleton A. Lathrop of Cheyenne, Wyoming, and oral argument by Mr. Lathrop.

280

OPINION

RINER, Justice.

This is a direct appeal proceeding brought to review a judgment of the District Court of Laramie County, granting the respondent, Gussie Jegendorf, plaintiff below, a divorce from Abe Jegendorf, defendant in that Court and appellant here.

The Legislature of this State, some years ago, (Laws of Wyoming, 1939, Ch. 106), enacted a statute reading:

"A divorce from the bonds of matrimony may be obtained, in addition to the causes now provided by law and subject to the same procedure and requirements, for the following cause:

When the husband and wife have lived apart for two consecutive years without cohabitation."

The subsequent Legislature (Laws of Wyoming, 1941, Ch. 2), re-enacted this law but added after the word "cohabitation" the following language:

"* * * but not upon such ground if such separation has been induced or justified by cause chargeable in whole or material part to the party seeking divorce upon such grounds, in the action."

It was under the authority conferred by the law as thus modified that the divorce was granted in the proceeding at bar.

Concerning enactments of this character it has been said appropriately:

"The public policy of these separation statutes is based upon the proposition that where a husband and wife have lived apart for a long period of time, without any intention ever to resume conjugal relations, the best interest of society and the parties themselves will be promoted by a dissolution of the marital bond. This is a comparatively new idea in the law of domestic relations and divorce. The object of the legislation is indeed plain enough, but the statutes through which it is sought to be accomplished are by no means uniform."

51 A. L. R. 763 Note. That laws of this general type prevail in a number of the states of the union is readily gleaned from an examination of the supplemental annotations to that note in 97 A. L. R. 985, and 111 A. L. R. 867. However, we have had our attention directed to no statute exactly like the one involved in this case. Most of these enactments are more inclined to resemble that of the State of Nevada which grants an additional ground of divorce in this language:

"When the husband and wife have lived apart for five consecutive years without cohabitation the court may at its discretion grant an absolute decree of divorce at the suit of either party. Stats. 1931, p. 180, c. 111, § 1."

Concerning that law the court in Herrick v. Herrick, 55 Nev. 59, 25 Pac. 2d 378, said:

"The idea of a divorce on the ground stated is an idea of recent origin. The legislative concept embodied in

the statute is that when the conduct of parties in living apart over a long lapse of time without cohabitation has made it probable that they cannot live together in happiness, the best interest of the parties and of the state will be promoted by a divorce."

In applying statutes like those last quoted, though it has been repeatedly urged upon the courts passing upon them that under them relief should be awarded only upon the application of the party not at fault, otherwise the grant of relief thus authorized would be allowing the wrongdoer to take avdantage of his own misdeeds, nevertheless it would seem that the majority of the opinions in the courts regarding this question deliberately reject this contention and permit either party to maintain the action irrespective of who was at fault . The ultimate result seems to be rested in a wise discretion to be exercised by the trial judge.

Our statute, given in full above, declares in substance that the separation of the parties to the marriage contract must not be "induced or justified" by a cause in "whole or material part" chargeable to the one who seeks the divorce. In other words, the one materially at fault in causing the cessation of cohabitation should not be permitted to invoke this ground. What that "cause" or fault shall be the statute does not say. We are inclined to think that it refers to something aside from "extreme cruelty" or "when either party shall offer such indignities to the other as shall render his or her condition intolerable"—grounds for divorce already established when the law aforesaid was passed—otherwise the statute would be without meaning. We are rather inclined to conclude that what shall constitute this "cause" must be left to the trial court to determine in the exercise of a sound discretion, reviewable here, of course, whether the "cause" chargeable to or fault of the party who seeks a dissolution of the bonds of matrimony on this ground was sufficient

to bar a divorce on that account. All the circumstances in the case should be closely scrutinized and carefully weighed in reaching the ultimate disposition of the matter.

In the case at bar we shall not attempt to review in detail the evidence in the record though the contention is made that this evidence was insufficient to establish the statutory ground above quoted. It would serve no useful purpose to spread the history of this marital disaster upon the reports of this Court. The parties were married January 21, 1933, and lived together until May, 1941. There were no children. At the time of the trial the wife was thirty-four years old and the husband forty-three. They had been living apart for nearly three years. The separation had commenced by the wife leaving the apartment where the parties had previously lived and while an attempt at reconciliation was thereafter made by the husband and discussed by both it failed utterly. She testified that there was absolutely no possibility of her returning to live with him. While the immediate cause of the separation was a disagreement concerning an apparently trivial matter yet during the whole eight years of their married life her testimony was that she was "miserable"; that she and her husband were not compatible in the more intimate associations of married life; that the ultimate result of it all was that her health failed and she suffered a "nervous breakdown"; that it became absolutely necessary for her to submit herself to a doctor's care and treatment.

A licensed medical practitioner connected with the Court of General Sessions, and Bellevue Hospital of New York City, corroborated her testimony relative to her condition saying that when she came to him "she was in an acute state of anxiety and depression." We have carefully studied this entire record having in mind

both the welfare of the parties and that of society, and in consequence we are unable to say that the trial court was in error in the exercise of a judicial discretion in granting plaintiff a divorce as announced by the judgment under review. If the health of one of the parties to the marital tie is jeopardized by longer continuance thereof, and after eight years of endeavor to make a success of the relationship, we see nothing amiss in a conclusion on the part of the trier of fact that the party whose health is thus affected was not at fault in withdrawing from cohabitation. With the wisdom of broadening the grounds for destruction of family ties this Court is not concerned. That is a matter for the people through their duly elected legislative representatives to decide. Only the subsequent history of our state will accurately condemn or vindicate their judgment.

It is contended that the District Court erred in refusing a continuance to enable the defendant to take some testimony by deposition in New York City for the purpose of rebutting the medical testimony given on behalf of the plaintiff. The facts bearing on the point are these: The cause was at issue and ready for trial November 2, 1943. November 6, thereafter, local counsel in Cheyenne, was notified that the case had been set for trial on November 26, 1943. Before that day arrived and on November 17, 1943, the defendant filed a motion for continuance supported by his affidavit where it was stated among other things that he was employed as a furrier and could not leave his work at that time of the year without "seriously jeopardizing his position"; that if a continuance and postponement of the trial was granted "there is a definite slack in January and February at which time arrangements may be made" for him to leave his employment without danger of losing his place; that he "has located several people that are assisting him in this case and he is of the opinion that within the next three or four

weeks he will be in possession of the names and addresses of those witnesses."

This motion was sustained and the trial of the cause was postponed for two months, i. e., until January 17, 1944. On that date, the cause coming on for trial, the defendant filed a second motion for continuance which was overruled as stated above; this motion was supported by the affidavit of New York City counsel for defendant and recited the purpose of the motion as hereinbefore set forth. The affidavit also disclosed a dispute, between the New York City attorneys for plaintiff and defendant, as to whether there was an agreement between them for the further postponement of the trial. Meanwhile, on December 30, 1943, and January 3, 1944, depositions on behalf of the plaintiff had been taken in New York City, counsel for both parties being represented at the proceedings. January 13, 1944, notice was served on Cheyenne counsel for plaintiff to take depositions in aid of the defendant, on January 27, 1944, in New York City. This notice was filed in the Clerk's office of Laramie County, March 24, 1944.

We do not think that the Court abused its discretion in disallowing a second continuance, and this for several reasons. The application for this continuance failed to comply with the provisions of Section 89-901, W. R. S. 1931, in a number of particulars, especially in the matter of diligence. When plaintiff's depositions were concluded in New York State there was nothing, so far as we are advised, to prevent eastern counsel from immediately serving notice to take depositions on behalf of defendant in New York City, as desired, and forwarding them to Cheyenne in time for use on the trial of the case on January 17, 1944. If that had been done promptly the depositions on behalf of defendant would have been available.

In Ford v. Simmons, 52 Colo. 249, 121 Pac. 167, the Court points out that:

"As a general rule, a second and further continuance is not favored, and will usually be denied unless the applicant can show that he has used all reasonable effort to effect the result upon which the grounds of continuance are based. 9 Cyc. 157."

17 C. J. S. 280, § 115, puts the principle in this form:

"The disposition of a second or further continuance for absent witnesses or evidence rests in the court's discretion; a refusal is ordinarily proper."

It is also urged for the defendant that it was prejudicial error for plaintiff's counsel to instruct a witness whose deposition was being taken in New York City not to answer relevant questions asked by defendant's counsel on cross-examination. No authorities are cited to support this view. It is said that considerable liberality should be allowed in the cross-examination of a witness in a divorce action when a deposition is being taken where the testimony is to be used in the trial of the cause in another state. We may concede this last proposition. The proper course to be followed in the taking of depositions is for the witness to be required to answer all relevant questions after objection has been made and thereafter when the deposition is read on the trial the Court can receive or disallow the answer as the right of the matter may require. So familiar is this practice to the members of the profession that it should hardly be necessary to outline it.

But here we have an instance where counsel for the plaintiff instructed a witness he had called to decline to answer a number of relevant questions propounded on cross-examination by opposing counsel. In many states there are provisions of law whereby a witness who refuses to answer a proper question put to him in the course of taking a deposition may be punished by

the proper authority in the state where the deposition is taken as for contempt. If that is not done it would seem that the proper remedy is for the opposing party to move to suppress the deposition, and, where the Court declines to do that, error may be assigned on the refusal.

In Hartford Fire Insurance Company v. Galveston H. & S. A. Ry. Co. (Tex. Com. App.) 239 S. W. 919, it is said:

"It is well settled in this state that a failure to answer material cross-interrogatories requires the suppression of the whole of such deposition. We think the refusal of the trial court to suppress the deposition of this witness on proper motion was an erroneous exercise of discretion. N.Y.T.&M. Ry. Co. v. Green, 90 Tex. 257, 264, 38 S.W. 31, T.&N.O. Ry. Co. v. Growder, 70 Tex. 222, 224, 7 S. W. 709."

And 18 C. J. 747, says that:

"Where a witness has failed or refused to answer a proper interrogatory, it has been considered good ground for refusing to receive the deposition in evidence, * * *."

These rules, of course, must necessarily be qualified as the circumstances of the matter may require. For example, if the facts sought to be elicited can be obtained from other parts of the deposition, then its suppression would ordinarily not be proper.

In the case before us no motion to suppress the deposition was made. On the contrary the defendant requested the Court to receive it in evidence so far as the cross-examination of the witness therein was concerned. However, it does not appear that the entire deposition which was eventually received in evidence by the Court or any part of it was read at the trial. Under such circumstances we are not inclined to think that the judgment should be reversed on the contention now advanced.

Finally, plaintiff has made application in this Court for an allowance to her of counsel fees. The judgment below awarded her a divorce, the return of her maiden name, but no counsel fees and no alimony. We have examined the affidavits of both parties concerning this matter and have reached the conclusion that the application should be denied. It is reasonably plain that defendant earns barely enough to support himself and that he is not steadily employed at his trade; he has no bank account and owns no property of any kind; he was compelled to borrow money on his insurance policy to meet his current debts. Plaintiff appears to be steadily employed and the defendant states that she, in fact, earns more than he does. Neither party can really afford the luxury of litigation but inasmuch as they have undertaken it we deem it for the best interests of all concerned to let each bear their own burdens therefrom.

The judgment of the District Court of Laramie County will therefore be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.