CHARLES DAWSON,                    *Plaintiff and Appellant,*

vs.

LOTTIE D. DAWSON,

*Defendant and Respondent.*

(No. 2341; January 28th, 1947; 177 Pac. 2d 200)

For the plaintiff and appellant, the cause was submitted upon the brief and also oral argument of Harry B. Henderson of Cheyenne, Wyoming.

For the defendant and respondent, the cause was submitted upon the brief and also oral argument of L. C. Sampson of Cheyenne, Wyoming.

522

## OPINION

BLUME, Justice.

The plaintiff, Charles Dawson, brought this action of divorce against the defendant, Lottie D. Dawson, on May 10, 1944 alleging first, that the defendant offered to him such indignities as to render his condition intolerable, and second, that the parties have lived apart

for two consecutive years without cohabitation, and that such separation was not induced or justified by cause chargeable in whole or material part to plaintiff. The court found "that the petition of divorce was not founded in or exhibited by collusion; that the grounds for divorce as alleged in the petition of the plaintiff were not corroborated as by law required." The divorce prayed for was accordingly denied. The court refused to allow the defendant any attorney fees as prayed by her, but allowed her the costs of the action. The plaintiff has brought the case here by direct appeal.

Without going into details, the recital of which would not subserve any good purpose, the record discloses the following: The testimony of the witness Marjorie Bell indicates that the defendant has at times an irascible temper, which was exemplified in open court at the time of the trial of the case in the court below. Part of this, however, may be explained by the fact that the defendant is hard of hearing; nor is her eyesight good. Plaintiff testified that the defendant made life a burden for him, particularly for ten years prior to May 28, 1936, by continually "brow beating" him; that he was refused the use of the kitchen of their home or of the living room or of the telephone; that at one time defendant threw a tea kettle full of boiling water at him; at another time a knife, and at still another time an iron handle. The immediate cause of his leaving the home of the parties on May 28, 1936, was, as he testified, the fact that when he came home from his work for the railroad company defendant kept "brow beating" him for two hours for being late, the cause of which he explained, and that he had to get some sleep before going back to work. Mrs. Dawson denied all indignities and all acts of cruelty. She stated in part: "I never fussed at that man in my life; he never fussed with me, and we never had any quarrels and we never had any racket;

all of the years we were living together neither one of us fussed with the other; I had a wonderful husband; he was perfect; Mr. Dawson always treated me. with the very, very highest respect all of his life * * * if I have done anything I don't know anything about it. We never quarreled and never had any trouble, never."

The evidence in the record shows that both parties to this action are now about sixty-eight years of age. They were married on January 4, 1895. They had two children, both of whom are of age and have homes of their own. Plaintiff left home on May 28, 1936, and has never returned. On January 21, 1937, in an action for separate maintenance, the defendant was awarded alimony against the plaintiff in the sum of eighty dollars ($80.00) per month. He earned at that time, as he testified, about two hundred forty dollars ($240.00) per month. He paid the alimony until some time in 1944, when he retired as a workman for the railroad company at a pension of one hundred nine dollars ($109.00) per month. He testified that he has no other property; that he has been sick for a number of years, and is now sick, and has been advised to seek another climate. The defendant owns her home, which she bought for the sum of forty-five hundred dollars ($4500.00). She testified that she had no other property aside from a few dollars in money; that at one time she received a little money from her daughter.

We may admit for the purpose of this case that the evidence was not sufficient to grant a divorce on account of indignities offered to plaintiff, and we shall confine this opinion to a consideration of the second ground for divorce, that of separation, which is based on Chapter 2, Session Laws of 1941, reading as follows:

"A divorce from the bonds of matrimony may be obtained in addition to the causes now provided by Chapter 35, Revised Statutes of Wyoming, 1931, and subject

to the same procedure and requirements, for the following cause:

"When the husband and wife have lived apart for two consecutive years without cohabitation but not upon such ground if such separation has been induced or justified by cause chargeable in whole or material part to the party seeking divorce upon such grounds, in the action."

We considered this statute in Jegendorf vs. Jegendorf, (Wyo.) 157 Pac. 2d 280, and held that it refers to something aside from cruelties and indignities offered; in other words, that the statute meant to liberalize the grounds for divorce then existing, as otherwise it would seem to have no meaning. It is said in 17 Am. Jur. 231, that "the public policy of these separation statutes is based upon the proposition that where a husband and wife have lived apart for a long period of time, without any intention ever to resume conjugal relations, the best interests of society and the parties themselves will be promoted by a dissolution of the marital bond." Keezer on Marriage and Divorce, 3rd Ed., Sec. 455, points out that nineteen states have separation statutes, and that "apparently there is a growing conviction in the United States that a marriage which has ceased to exist factually by its continuance does more harm than good." See Annotations in 51 A. L. R. 763, 97 A. L. R. 985, and 111 A. L. R. 867. Previous to 1939 the statute permitted a divorce in case of separation—desertion—only to the injured party. Sec. 3-5905, Wyo. Comp. Statutes, 1945, (Sec. 35-108, Revised Statutes of 1931). The legislature of 1939 liberalized that policy and provided by Chapter 106, Session Laws of 1939, that a divorce should be granted "when the husband and wife have lived apart for two consecutive years without cohabitation." The majority of courts under a statute like that have held that the right to a divorce does not depend upon whose fault the separation might be brought about. 17 Am. Jur.

232. But the legislature of 1941 evidently deemed the ground of action provided for by the legislature of 1939 to be too liberal, and amended the statute so as to read as already mentioned. The ground of separation remained, but with a limitation. That the legislature intended to return to the law as it existed prior to 1939 is not probable. If it had so intended the law of 1939 should have been repealed instead of amended. Hence the inquiry is as to what was intended by the limitation of the amended act of 1941. We considered that point in Jegendorf vs. Jegendorf, supra, in so far as was necessary in that case.

The various statutes permitting divorce on the ground of separation are not uniform and few of them read like ours. However, the statutes of New Hampshire and Vermont, as that of Wyoming, seem to require freedom from fault on the plaintiff's part. Keezer, supra, Sec. 455. We have found no decisions from these states on the point in question. The Supreme Court of Washington, in Pierce vs. Pierce, 120 Wash. 411, 208 Pac. 49, held that the statute in that state by its terms permits only the injured party to bring an action on the ground of separation, but the court concluded as follows:

"The law was changed, in that it created what we deem to be nothing more nor less than a rule of prima facie proof, to wit ,that an applicant for divorce, pleading and showing that there has been a separation and living apart for a period of more than 5 years, shall prima facie be presumed to be the injured party and be entitled to a decree of divorce. In other words, when the applicant has proceeded thus far, he or she has made out a case which in the absence of other proof entitles him or her to a divorce as a matter of right. But that to our minds does not argue that such proof becomes conclusive upon the question of who is 'the injured party' in the sense of precluding the opposing party from showing by proper evidence who is in fact 'the injured party'."

In other words, the court held that the fault of the plaintiff is in the nature of an exception which must be proven by the defendant. See 31 C. J. S. 712. In view of the fact that our statute meant to liberalize the causes of divorce, we do not think we are justified in giving our statute a stricter interpretation than did the supreme court of Washington. The trial court did not determine the issues in that light, and we are left free to draw our own conclusions. We feel that in this particular case we can properly do so, although ordinarily, of course, the determination of questions of fact should be, and will be left, in the first instance at least, to the court below. We do not think that we are warranted in holding that the defendant has sustained the burden of proof which rests upon her as above mentioned. She testified, as already stated, that the plaintiff had been a perfect husband and had always treated her with the utmost respect. We think we are not warranted in inferring from that testimony that a husband of that character was the cause of the separation. Perfect husbands do not, ordinarily at least, abandon their wives without adequate cause. We might mention incidentally that the supreme court of Washington in the late case of Evans vs. Evans, 182 Wash. 297, 46 Pac. 2d 730, allowed a divorce on the ground of separation where both parties were at fault.

While the holding of the trial court is not altogether clear, it seemingly denied the divorce because "the grounds for divorce, as alleged in the petition of the plaintiff, were not corroborated as by law required." The court perhaps had in mind the provision of Sec. 3-5932, Wyo. Comp. Statutes of 1945 (Sec. 35-131, Rev. Statutes of 1931) reading as follows: "No decree of divorce, and of the nullity of a marriage, shall be made solely on the declarations, confessions or admissions of the parties, but the court shall in all cases require other evidence in its nature corroborative of such de-

clarations, confessions or admissions." This statute, as may be noted, does not, by its terms, require corroboration of testimony. The declarations there referred to are confessions as contra-distinguished from testimony as a witness. Rosecrance vs. Rosecrance, 127 Mich. 322, 86 N. W. 800. It is true that courts will not, because of public policy, ordinarily grant a divorce upon the uncorroborated testimony of, the plaintiff (27 C. J. S. 730). But that is held in many states, in the absence of a statutory requirement of corroboration of testimony, to be a rule of practice and not an inflexible rule, and that a divorce may be granted on the uncorroborated testimony of the plaintiff if it clearly appears and the court is satisfied that the ground of divorce has been proven and that no collusion exists. Robbins vs. Robbins, 100 Mass. 150; 97 Am. Dec. 91; Sweet vs. Sweet, 119 Me. 81, 109 Atl. 379; Barbara vs. Barbara, 57 N. Y. S. 2d 156; Brookhouse vs. Brookhouse, 286 Mich. 151, 281 N. W. 573 and cases cited; Stevens vs. Stevens (Mo. App.) 158 S. W. 2nd 238, 241; Callahan vs. Callahan, (Mo. App.), 192 S. W. 2nd 48; Black vs. Black (Tex. Civ. App.) 185 S. W. 2nd 476; Mortensen vs. Mortensen, (Tex. Civ. App.), 186 S. W. 2nd 297; Babcock vs. Babcock, 117 Conn. 310, 167 Atl. 815; 3 Nelson on Divorce (2d Ed.) 71, 72. In the case at bar there was not only an admission by defendant in her pleadings that the parties had been separated for eight years, but both parties testified thereto. The separation accordingly was fully proven. The fact that a separate maintenance decree, to which counsel for defendant refers was entered in 1937, does not affect the right to a divorce if otherwise justified, at least in this case, since the order of separate maintenance is not in the record, and we do not know whether it decided anything as to the fault of either party. See Cochrane vs. Cochrane 303 Mass. 467, 22 N. E. 2d 6, 138 A. L. R.

341. 27 C. J. S. 583. 1 Nelson on Divorce, supra, 151, 152.

We are unable to see how the defendant or society will in any way be benefited by denying the plaintiff a divorce. There seems to be no possible hope of any reconciliation. The parties have now been separated for over ten years, eight of which were apparently with the acquiescence of the defendant. If the aim of the statute is, as has been held (Buford vs. Buford, 156 Fed. 2nd 567), to legally end a marriage which no longer exists in fact, then this, we think, is an appropriate case to carry that aim into effect. A divorce, accordingly, should have been decreed by the trial court.

The defendant asked for counsel fees in the court below. The trial court did not grant her any. In view of the fact that plaintiff testified that he is sick and has nothing except a pension of one hundred nine dollars ($109.00) per month, barely adequate to support him, we shall follow the trial court in this respect, and deny counsel fee asked in this court. It may be that the trial court, in view of the denial of a divorce, did not adequately consider the question of alimony. It may, accordingly, upon application, now or hereafter, reconsider the question of alimony and may make such provision as may be just, particularly if it should appear that plaintiff's financial condition is better than shown by the testimony heretofore adduced.

The judgment of the trial court is, accordingly, reversed, with directions to enter a decree of divorce and for other proceedings, if any, as hereinabove mentioned.

RINER, C. J., and KIMBALL, J., concur.