MELVIN I. STINSON,

*Plaintiff and Appellant,*

vs.

RUTH CURTIS STINSON,

*Defendant and Respondent.*

(No. 2560; November 12th, 1952; 250 Pac. (2d) 83)

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of C. L. Bates and Robert S. Lowe, both of Rawlins, Wyoming.

For the defendant and respondent the cause was submitted upon the brief and also oral argument of J. B. Sullivan of Douglas, Wyoming.

## OPINION

Per Curiam:

This cause comes here on direct appeal from the District Court of Carbon County. On June 28th, 1951, Melvin I. Stinson, as plaintiff brought an action for divorce in that court against Ruth Curtis Stinson as defendant. The district court aforesaid declined to grant the relief sought. Accordingly, Stinson as appellant, has brought the record here for review and Ruth Curtis Stinson appears therein as respondent.

The petition of the plaintiff after alleging in its paragraph "1" the marriage of the parties on January 26th, 1926, in its paragraph "2" the bona fide residency of the plaintiff in this State for more than 60 days prior to the filing of his petition for a divorce and his present residence in Carbon County, in its paragraph "3" that said petition is not exhibited through collusion of the parties hereto stating also that plaintiff is not guilty of the misconduct charged against the defendant, in its paragraph "4" that there is one child of the said marriage, Helen Stinson, who is over the age of 18 and is living with the defendant, and in its paragraph "5" that there is no community property; and reads in paragraphs "6" and "7" thereof verbatim as follows:

"6. Plaintiff and defendant have lived separate and apart for more than 2 consecutive years immediately preceding the filing of this divorce petition without cohabitation due to no reason induced or justified by cause chargeable in whole or material part to the plaintiff herein.

"7. Defendant has offered plaintiff such indignities as to render his married condition intolerable, which indignities the plaintiff is ready, able and willing to set forth in a bill of particulars upon request of the defendant."

Plaintiff then prayed that he be granted a divorce from the defendant. At the request of the defendant, plaintiff supplied a Bill of Particulars relative to the charge in said paragraph "7" of the petition which reads:

"Pursuant to the motion of the defendant filed herein the plaintiff sets forth the following indignities which have rendered the plaintiff's married condition intolerable to-wit:

"1. During the last two years that the parties herein were living together as husband and wife, the defendant constantly nagged at the plaintiff and continually found fault with him.

"2. During the fall of 1947, the exact date being unknown to the plaintiff herein, the defendant in a fit of angry passion destroyed all of plaintiff's clothes, together with his pocket book containing $17.00 in currency, plaintiff's driver's license and his social security card.

"3. Defendant has a very violent temper and during the entire married life of the parties and more particularly during the last year that the parties herein lived together as husband and wife the defendant would become violently angry at the plaintiff and would supplement her exhibitions of temper by throwing household furnishings at the plaintiff.

"4. During the entire married life of the parties herein the defendant treated the plaintiff as an employee and belittled him on any of his accomplishments and insinuated to the plaintiff that he would have nothing whatsoever if it wasn't for her and that she was tired of having him entirely dependent upon her for his support and maintenance.

"5. That during the last several years that the plaintiff and defendant were living together as husband and wife, the defendant treated the plaintiff very coldly and indifferently and without any love and affection.
"6. That during the entire married life of the parties, the defendant never consulted the plaintiff about any

family affairs or family business and was the final say
on all family affairs.

"7. That during the last year that the parties herein
lived together as husband and wife the defendant called
the plaintiff vile and unprintable names.

"8. That on numerous occasions during the last two
years that the parties herein were living together as
husband and wife the defendant has told plaintiff that
if he was dissatisfied with his married life that he could
move out."

The defendant's answer admitted the marriage of
the parties but asserted that it took place January 27th,
1925, at Lusk, Wyoming. The allegations of paragraph
"2" of said petition and the first allegations in para-
graph "3" were admitted, but the last allegation of that
paragraph was denied. The allegations of paragraphs
"4" and "5" were admitted and those numbered "6"
and "7" were denied.

As a further answer on behalf of the defendant it is
stated that on February 17, 1948, Ruth Curtis Stinson
filed her petition for a modification of a decree of sep-
arate maintenance theretofore originally passed in her
favor on May 23rd, 1936, and subsequently modified
several times and especially on December 8th, 1937.
To that petition for modification Melvin Stinson filed
an answer and cross-petition; the latter pleading re-
questing a divorce from Ruth Curtis Stinson on the
grounds of indignities which are set forth in his plead-
ing. It is also stated that thereafter such proceedings
were had, that Ruth Curtis Stinson was given a judg-
ment modifying said decree and also denying Melvin
Stinson's prayer for a divorce and on account of this
decree so far as it related to the detailed indignities in
plaintiff's petition aforesaid they are res adjudicata
and barred.

A further defense of defendant's answer set forth a request for suit money and attorney's fees.

As another defense interposed for plaintiff's petition Ruth Curtis Stinson states that on May 25, 1948, the court entered an order requiring Melvin Stinson to pay certain sums of money monthly while Helen Stinson a child of the parties as aforesaid, continues in high school. That the plaintiff has failed to pay these sums and should not be heard until he does. The answer concludes with a prayer for suit money and attorney's fees.

Plaintiff filed a reply to defendant's answer alleging that:

" * * * most of the indignities complained of were continuing indignities and not all the same indignities alleged in plaintiff's cross petition filed in the original proceedings."

Replying to the third and fourth answers of defendant, he denied each and all of the allegations therein set forth.

As a separate reply to defendant's fourth answer plaintiff alleges he has fully complied with the court's order therein mentioned as shown by the payments listed on a schedule marked Exhibit "A" and made a part of the reply.

The cause was tried December 20, 1951, on these pleadings and a judgment was entered stating that:
" * * * the Plaintiff in open court having dropped and dismissed the charge relating to indignities as embraced in Paragraph Seven of Plaintiff's Petition and having proceeded to trial upon the cause relating to non-cohabitation for two consecutive years as embraced in Paragraph Six of Plaintiff's Petition, and

The Court being informed and advised, finds:

1. Generally against the Plaintiff and that he is not entitled to a divorce from Defendant on the pleadings and evidence before the Court, and

2. That, considering all facts and circumstances, including the financial condition of the parties, Defendant should not be awarded costs or fees.

"IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court:

"1. That Plaintiff's prayer for divorce against Defendant be and the same is hereby denied, and

"2. That Defendant's prayer for attorney's fees and suit money and costs be and the same is hereby denied."

This is the judgment which we are asked to review in the instant appeal proceedings. Other facts material to the disposition of the case will subsequently be mentioned as they may be needed to supply a proper understanding of the matter now being considered.

The original order of separate maintenance obtained by Ruth Curtis Stinson, May 23rd, 1936, is as follows: it recites her appearance as plaintiff with her counsel, and Melvin Stinson by his counsel only and verbatim sets forth:

" * * * and the court having heard the evidence adduced in behalf of the Plaintiff and being advised in the premises.

"IT IS THEREFORE JUDGED AND DECREED that until further order of this Court, Defendant be required to pay into this court as support for the children of these parties, an issue of their marriage, and as separate maintenance for the Plaintiff, the sum of thirty dollars ($30.00) a month for the months of May, June and July and twenty dollars ($20.00) a month for each and every other month in the year, together with costs of this action in the sum of $3.65.

"DONE IN OPEN COURT this 23 day of May, 1936."

The only point we have to consider is, therefore, whether the court erred in declining to grant Melvin Stinson a divorce as sought by him on the single ground of non-cohabitation for two consecutive years as set forth in paragraph "6" of plaintiff's petition aforesaid.

The statute involved here is consequently section 3-5906, p. 539 W. C. S. 1945 which reads:

"A divorce from the bonds of matrimony may be obtained, in addition to the causes now provided by Chapter 35, Revised Statutes of Wyoming, 1931 (§§ 3-5901, 3-5905, 3-5907 -3-5939) and subject to the same procedure and requirements for the following cause:

"When the husband and wife have lived apart for two (2) consecutive years without cohabitation but not upon such ground if such separation has been enduced or justified by cause chargeable in whole or in material part to the party seeking divorce upon such grounds, in the action."

This statute was definitely considered by this court in two comparatively recent cases, viz: Jegendorf v. Jegendorf, 61 Wyo. 277, 157 P (2d) 280, and in Dawson v. Dawson, 62 Wyo. 519, 177 P(2d) 200.

An examination of the record before us establishes that the parties to the instant litigation were married at Lusk, Wyoming, January 27th, 1925. There were two children born of this marriage, Doris Stinson Carstairs now about 27 or 28 years old, and Helen Stinson, now about 19 or 20 years old. The oldest daughter is married and lives in Casper, Wyoming, while the younger lives with the respondent, her mother, on the latter's ranch near Douglas, Wyoming. Mr. and Mrs. Stinson lived together as husband and wife on her ranch until February 26th, 1936, when she filed her petition for separate maintenance for herself and the two children. That action resulted in the decree recited

above. Thereafter a number of proceedings seem to have been had—mostly instituted by Mrs. Stinson for modifications of the original order to meet the requirements of the family and especially those of the children as they were growing up to young womanhood. However, on February 17, 1948, the last of these legal proceedings for modification were concluded wherein Melvin Stinson filed on April 8, 1948, an answer and also a cross-petition asking a divorce on the ground of "intolerable indignities" (W.C.S. 1945 section 3-5905, 8th subdivision). A hearing was had on the issues in that matter made up, with the result as stated above that Stinson was denied a divorce and the wife was granted a modification of the decree substantially as she requested.

While the parties were not living together at the time of the granting of the decree of separate maintenance they seem to have later cohabited but finally separated again in early October 1947 and have since lived separate and apart from each other. On the trial of the instant suit they had been so living for something over four years—double the number of years required by the statute set forth above.

The undisputed testimony before us establishes the fact last cited with reasonable clarity.

In the Jegendorf case, 61 Wyo. 277, 157 P (2d) 280, 282 this court indicated, quoting the law of the State of Nevada on this matter, that in Herrick v. Herrick, 55 Nev. 59, 25 P (2d) 378, 379, the Nevada Court had remarked:

" 'The idea of a divorce on the ground stated is an idea of recent origin. The legislative concept embodied in the statute is that when the conduct of parties in living apart over a long lapse of time without cohabitation has made it probable that they cannot live together in

happiness, the best interest of the parties and of the state will be promoted by a divorce.' "

It is obvious that this utterance of the Nevada court accords in large measure with the view expressed in the language of the note appearing in 51 A.L.R. 763, 764:

"The public policy of these separation statutes is based upon the proposition that where a husband and wife have lived apart for a long period of time, without any intention ever to resume conjugal relations, the best interests of society and the parties themselves will be promoted by a dissolution of the marital bond. This is a comparatively new idea in the law of domestic relations and divorce. The object of the legislation is indeed plain enough, but the statutes through which it is sought to be accomplished are by no means uniform."

In the 3rd edition of Keezer on Marriage and Divorce, edited by Mr. Morland the preface points out that a divorce for living apart has been established as a ground for divorces in more than 20 jurisdictions in this country. In the body of the text last mentioned appears the following statement on page 507, § 455 that: "Apparently there is a growing conviction in the United States that a marriage which has ceased to exist factually by its continuance does more harm than good."

The statutes in the several states concerning this matter will not be found to be always precisely similar.

In Dawson v. Dawson 62 Wyo. 519, 177 P (2d) 200, 202, 203, referring to and quoting from the Washington decision of Pierce v. Pierce, 120 Wash. 411, 208 P. 49, 53, this was said:

"In other words, the court *held that the fault of the plaintiff is in the nature of an exception which must be proven by the defendant.* See 31 C.J.S., Evidence, § 104, p. 712. In view of the fact that our statute meant to liberalize the causes of divorce, *we do not think we are justified in giving our statute a stricter interpretation*

*than did the supreme court of Washington. The trial court did not determine the issues in that light, and we are left free to draw our own conclusions.* We feel that in this particular case we can properly do so, although ordinarily, of course, the determination of questions of fact should be, and will be left, in the first instance at least, to the court below. We do not think that we are warranted in holding that the defendant has sustained the burden of proof which rests upon her as above mentioned. She testified, as already stated, that the plaintiff had been a perfect husband and had always treated her with the utmost respect. We think we are not warranted in inferring .from that testimony that a husband of that character was the cause of the separation. Perfect husbands do not, ordinarily at least, abandon their wives without adequate cause. We might mention incidentally that the supreme court of Washington in the late case of Evans v. Evans, 182 Wash. 297, 46 P (2d) 730, allowed a divorce on the ground of separation where both parties were at fault." (Italics supplied.)

In the case at bar the same situation prevails. The trial court did not, apparently, impose the burden of proof upon the defendant as indicated in the Dawson decision. It is true that a large part of the transcript of the testimony before us sets forth testimony concerning the alleged improper relations of Melvin Stinson with another woman, one Alice Millard. But nowhere does it appear that Melvin Stinson even knew this woman or that he misbehaved with her on either the date the original decree' of separate maintenance was awarded defendant or on the date when the parties finally separated.

Obviously what plaintiff did after the separation was an accomplished fact does not establish that the fault causing the separation can be laid upon the plaintiff's shoulders; especially is this so when defendant testified without dispute viz: "Mr. Stinson was a very affectionate husband when he lived with us, very hard

worker" and also that "he is quite industrious" and that "he would go out during the time they were living together and shear sheep and (do) other types of laboring work in order to make a few extra dollars." The question propounded to her in these words:

"Q. Isn't it a fact Mrs. Stinson that you don't want him but you don't want anyone else to have him either, isn't that a fact?"

was answered evasively thus:

"A. I love my husband, I want him at home in his own place instead of living with this woman."

It is worthy of note here that her testimony as to Mr. Stinson's character may very well be compared with that given in the Dawson case quoted above. In the case last mentioned it will be recalled that it was remarked "we think we are not warranted in inferring from that testimony that a husband of that character was the cause of the separation."

Mrs. Carstairs, the married daughter of the parties, testified as a witness in the case and answered without objection a question put to her in these words:

"Q. Do you know why your mother and father aren't living together?"

as follows:

"A. For the simple reason they don't agree."

The same witness testified, without contradiction or objection, that her mother told her, "Well, I don't care if he never comes back."

Again in the Dawson case supra it also appears there was a decree of separate maintenance as in the case before us. Regarding that fact, however, it was remarked in that case, on page 203 of 177 P (2d):

"The fact that a separate maintenance decree, to which counsel for defendant refers was entered in 1937, does not affect the right to a divorce if otherwise justified, at least in this case, since the order of separate maintenance is not in the record, and we do not know whether it decided anything as to the fault of either party."

In the case at bar it affirmatively appears by the very terms of the decree of separate maintenance set forth above that the district court did not undertake to adjudge who was at fault, i.e. whether plaintiff or defendant was the guilty party.

In our examination of the case law touching both the statutory law and the facts involved in the case at bar, no case has been called to our attention which so closely touches the controlling points in this case we are now considering as the Dawson case supra.

We may say, therefore, that we know of no better way of concluding our discussion of this case, the record of which we have carefully studied, than to reiterate what was said in the opinion filed in the Dawson case near its close, (p. 203) :

"If the aim of the statute is, as has been held (Buford v. Buford, App. D.C., 156 F. 2d. 567), to legally end a marriage which no longer exists in fact, then this, we think, is an appropriate case to carry that aim into effect. A divorce, accordingly should have been decreed by the trial court."

For we think that the facts in that case and the rule of law invoked for its disposition are so closely analogous with those involved in the case at bar that we can conclude that the ruling in the Dawson case should supply the rule to be applied in the case at bar. We are constrained therefore to reverse that part of the judgment below which denied plaintiff a divorce and to

affirm it as to the remaining portions thereof. The cause is accordingly remanded with instructions to the district court of Carbon county for such proceedings as are not inconsistent with the views herein expressed.

*Modified and Affirmed.*

## ON PETITION FOR REHEARING

An application for rehearing was filed in this case and was denied without Opinion on February 17, 1953.