Margaret BOSCHETTO, Appellant
(Defendant below),

v.

Ben BOSCHETTO, Appellee (Plaintiff below).

No. 2873.

Supreme Court of Wyoming.

Aug. 18, 1959.

343 Pac.2d. 503

376

Magagna, Galicich & Hamm, Rock Springs, for appellant.

Albert E. Nelson and William H. Jackson, Jr., Rock Springs, and A. G. McClintock, Cheyenne, for appellee.

Before BLUME, C.J., and PARKER and HARNSBERGER, J.J.

## OPINION.

Mr. Chief Justice BLUME delivered the opinion of the court.

This action, which is one for divorce, was instituted by Ben Boschetto, appellee herein, on March 30, 1956, asserting that Margaret Boschetto, his wife and appellant herein, had offered such indignities to the appellee as to render his condition as husband of defendant intolerable. Margaret Boschetto answered, generally denying the allegations of the petition, and filed a cross-petition alleging that the plaintiff had been guil-

ty of extreme cruelty to the defendant and that the plaintiff had offered such indignities to defendant as to render her life with plaintiff intolerable and further alleging that plaintiff and defendant had, by their joint efforts and as joint adventurers and partners, acquired property in excess of $200,000 in value. She asked that she be divorced from the plaintiff. The case was tried to the court without a jury and at the close of the trial the court rendered judgment granting a divorce to the plaintiff, Ben Boschetto, and dividing the property of the parties as hereinafter mentioned. From that judgment Margaret Boschetto has appealed. She will be referred to hereafter as the appellant and Ben Boschetto will be referred to as the appellee.

It appears herein that from 1941 to August, 1947, the parties herein lived together as husband and wife and held themselves out as such but were not in fact married. They were married, however, in August, 1947, and lived together as husband and wife except as hereinafter indicated until February, 1956, when the appellee left the appellant, and the parties have not lived together since that time. The appellee had been married previously and by that marriage had three children, namely, a son named Ben, born in 1927, Alfred, a son born in 1930, and one daughter named Verlee born in 1932. The appellant also had been previously married and had one daughter who died in 1949.

1. *As to the divorce.* The record herein is voluminous. Aside from exhibits, we have some 350 pages of typewritten testimony before us. As we stated in Steere v. Steere, 72 Wyo. 501, 267 P.2d 750, we see no good reason to relate the testimony in great detail. It will subserve no good purpose. That is particularly

true in view of the fact that both parties herein seek a divorce. Appellee relied upon indignities heaped upon him. It appears that soon after the parties were married the appellant commenced to take intoxicating liquors to excess and did so frequently. One witness testified that she became intoxicated practically every holiday, every weekend and sometimes during the middle of the week. During such times appellant would curse the appellee, calling him such names as "bastard", "dago", "wop" and "s. o. b." At one time she told the appellee to go to hell, that she was tired of him and for him not to come back. Three special incidents of that nature were testified to in detail, commencing with 1954, after which the appellee left the appellant and commenced an action for divorce. However, they became reconciled. Another such incident occurred in 1955 at their summer home when appellee, as he stated, became a wreck and drove home and again commenced an action for divorce. They were then separated for several months but became reconciled on Christmas Eve of 1955. But this, unfortunately, lasted only six weeks and in February, 1956, her conduct, as shown by the testimony, was worse than ever and appellee finally left her and the present action was commenced. At one time, as stated by the appellee, appellant called appellee's daughter, Verlee, a "black bitch". Appellant herself testified that when she had some intoxicating liquor her courage rose and then she would "tell him off". We think that there was sufficient testimony to warrant the trial court in holding that the complaint of appellee was well taken. It is said in 27A C.J.S. Divorce § 44 (2), p. 150, that indignities consist of various acts varied in their nature. "Generally speaking, such acts may consist of rudeness, vulgarity, unmerited reproach, haughtiness, contumely, studied neglect, in-

tentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement."

Counsel for appellant contend that appellee was guilty of the same thing of which he accuses the appellant and that, therefore, under the rule of recrimination, he cannot obtain a divorce. Furthermore, they say that he was guilty of cruelty to the appellant and, hence, the appellant is entitled to a divorce. However, we do not think that the rule of recrimination is applicable in this case, in view of the contradictory evidence appearing in the record. Appellant testified that the appellee called her vile names, but the appellee testified that he never abused her and that he did everything he could to make the marriage a success. The trial court resolved the point in appellee's favor and this court cannot interfere. There was testimony that appellee hit the appellant on Christmas Eve, 1952, and once, perhaps twice, in the year 1955 at their summer home. Appellee denied that he hit the appellant and stated that he merely pushed her, perhaps onto the bed. He indicated how he pushed her. The trial judge saw how it was done. We have no means of knowing that, so this question too must be left to the judgment of the trial court and we cannot interfere. This is true also in regard to the charge that the appellee was frequently guilty of becoming intoxicated. The appellee denied that. Ted Peterson, a nephew of the appellant, testified that he went to a so-called "cat house"— whatever that may be—with the appellee, and that they had a beer and left. It does not appear how often that was true; perhaps that was the only near place where appellee and Peterson could get a beer, and we cannot regard the matter seriously. Counsel for appellant intimate that appellee was guilty of infidelity with-

out any evidence to support the charge. Counsel also complain because he did not take her to Italy with him in 1953 and to other places. He probably would have done so if they had been more congenial. The failure to do so did not justify her misconduct nor does the fact that she suffered with neurosis. If she was unable to control taking intoxicating liquor she could have gone to bed and "slept it off". She could have avoided, we think, calling the appellee the abusive names which we have heretofore mentioned. Counsel also contend that appellee deliberately planned to get rid of the appellant by taking liquor home—which he did to some extent— and by other actions. We do not get that impression from the record before us. Appellee married appellant in 1947 after living with her in a meretricious relationship. He took the trouble to take her to Albert Nelson to get him to persuade her to refrain from using intoxicating liquor to excess. He caused her to be taken to a psychiatrist in Salt Lake City in the hope that treatment by him would help her. He twice brought an action for divorce and twice a reconciliation took place. Such actions are inconsistent with the claim that appellee tried to get rid of the appellant. Counsel for appellant make an impassioned plea in their brief on appellant's behalf. That could very well have been addressed to the trial court but is somewhat out of place when addressed to an appellate court. The trial court saw the witnesses on the witness stand. Appellee testified for nearly a whole day. The court had ample opportunity to judge as to whether or not he was telling the truth. We are not in the same position as the trial court. It is probably true that appellee's conduct was not altogether above reproach. We seldom find that to be true. As said in 1 Nelson, Divorce and Annulment, 2d Ed., § 10.03, p. 364, "Quite a number of courts have pointed to the fact that the wrecking of a

marriage is almost always due to fault on both sides." However, it is not necessary for a complainant to be entirely blameless in order to be entitled to a divorce. 27A C.J.S. Divorce § 56(3) b, p. 180, n. 73; 27A C.J.S. Divorce § 67a, pp. 228-229, in 59.10. We do not think that we would be justified in interfering with the finding and judgment of the trial court awarding the appelle a divorce herein. We find no reversible error so far as admission of testimony is concerned.

2. *Division of the property.* Section 3-5916, W.C.S. 1945, provides as follows:

"In granting a divorce, the court shall also make such disposition of the property of the parties, as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of the wife and children, and the court may also decree to the wife reasonable alimony out of the estate of the husband having regard for his ability, and to effectuate the purposes aforesaid, may order so much of his real estate or the rents and profits thereof, as is necessary to be assigned and set out to the wife for life, or may decree a specific sum to be paid by him to her, and use all necessary legal and equitable processes to carry its decrees into effect."

In Lovejoy v. Lovejoy, 36 Wyo. 379, 256 P. 76, 79, Id., 38 Wyo. 358, 267 P. 91, this court stated:

"It is conceded that in making a division of property under the statute the trial court exercises a discretion. There are no hard and fast rules to control its action. The statute does not require an equal division. A just and equitable division is as likely as not to be unequal. The decision of the trial court should not be disturbed, except on clear grounds, as that court is usually

in a better position than the appellate court to judge of the respective merits and needs of the parties. * * *"

Inasmuch as a trial court's judgment cannot be disturbed except on clear grounds, we have seldom interfered with the action of the trial courts and whenever we have done so we have interfered only to a very limited extent. It is readily seen that unless we adhere to that course we should be apt to have before this court a plethora of appeals in divorce cases involving a division of property and asking us to virtually constitute ourselves as a court of the first instance to divide the property. We do not think that that is the function of this court.

The court awarded to the appellant Lots 5 and 6, Block 10, in the Clark Addition to Rock Springs, Sweetwater County, Wyoming, valued at $23,000. This property was the home of the parties and contained in addition a number of apartments which were rented out to other parties. The court further awarded to the appellant the sum of $10,000 in cash, a 1955 Oldsmobile sedan and attorneys' fees of $2,500. It awarded all other property to the appellee. The net worth of appellee, according to the stipulation of the parties, was approximately $199,000, so that after deducting what was awarded to the appellant and considering the attorneys' fees, the property left to the appellee would be approximately in the sum of $160,000 as against about $37,000 awarded to the appellant. Counsel for the appellant claim that their client should have half of the appellee's property.

Appellant and appellee, as heretofore indicated, started living together in a meretricious relationship in July, 1941, holding themselves out, however, as hus-

band and wife. This relationship continued until they were married on August 22, 1947. The evidence fairly discloses, we think, that appellant was aware that the relationship was meretricious. She was 25 years of age in 1941, had been married before, and had a child by that marriage. Hence, the case of Roberts v. Roberts, 64 Wyo. 433, 196 P.2d 361, 197 P.2d 697, has no application in the case at bar. We do not think that on account of public policy we are justified in overruling Willis v. Willis, 48 Wyo. 403, 49 P.2d 670, 681, Id., 49 Wyo. 296, 54 P.2d 814, where we stated:

> " 'A wife is not entitled to compensation for services rendered her husband. And where a woman lives with a man as his mistress or concubine, she cannot recover for such services as are incidental to the relationship in which they live, unless a contract for payment is shown.' " 40 Cyc. 2823.

In Annotation, 31 A.L.R. 1255, 1259, it is said:

> "Where a woman cohabits with a man and has actual knowledge of the unlawful nature of the relationship, she does not by such cohabitation alone acquire any rights in the accumulations of the man during such relationship * * *. She may, however, acquire certain rights where it is established that there was an agreement to pool earnings or an agreement of partnership or joint adventure, or where there are circumstances adequate to establish a constructive trust. * * *"

Counsel for appellant claim that there was an agreement to pool earnings as partners or joint adventurers and that there were circumstances adequate to establish a constructive trust.

It appears herein that the appellant had $500 which she gave to the appellee about 1942 and which was

used to pay unpaid bills. The court appears to have regarded that as a loan and we cannot say that we disagree. The court took this loan into consideration in making its award of property. Appellant also did the housework for the parties and rented the apartments connected with their home, occasionally cleaning an apartment if it became vacant, and doing occasional painting in that connection whenever it was necessary. But the main stress of counsel for appellant is laid on the fact that she signed notes with appellee aggregating some $75,000 during the period here in question. Counsel for appellee dispute this and say that many of the various notes were signed in order to pay off other and previous notes. We need not, we think, go into the matter. Counsel for appellant say and stress the fact that she was just as much responsible for the payment of these notes as appellee. Theoretically that is true. Practically speaking, it is not. She had no visible property of any kind. She was earning no money. She had no financial standing whatever. Hence, she cannot be said to have helped the appellee financially by signing notes with him. The addition of her name to the notes was substantially merely a formality. We find no sufficient evidence in the record to justify us in holding that there was any agreement or pooling of property as partners or joint adventurers or that there is any basis for a constructive trust.

However, the appellant stands in this case before the court not as a courtesan but as the lawful wife of the appellee so that Willis v. Willis, supra, has only a limited bearing in this case, and we must determine whether or not this court can be justified in modifying the awards made by the trial court in view of the fact that the appellant was the wife of appellee for a period of nine years before the commencement of this action.

The home and the apartment awarded to appellant had been acquired by the appellee long before 1941. The appellee started his grocery business in 1931, to which a locker business was added in 1948 and 1949. Appellee worked hard, as is admitted by the appellant herein, often working late at night and on Sundays. He built up his business until now it is a substantial, well-paying one. Our statute provides that in dividing property in the case of divorce the derivation of the property is an item to be considered. Hence, what his children helped him to acquire is relevant herein. The testimony shows that his boys commenced to work for him in the store at hours when not in school from the time when they were about eight years of age, that they worked hard and got only their spending money. The daughter too, who was 15 years of age in 1947, helped in the store and helped the appellant in taking care of the housekeeping and the washing necessary for the store. The appellant during the marriage continued to take care of the renting of these apartments and matters incidental thereto as she did before the marriage. In addition she worked about two weeks in the store in 1948, possibly a little more, and ran a trailer and hamburger and popcorn stand in conjunction with her husband for about two months in 1949 during the evenings. She kept house during this time but the oldest boy, Ben, went into military service in 1945 to 1946 and was married in 1949. The second boy, Alfred, went to military service in 1951 and was married during that time. The girl, Verlee, was married in 1953. None of the children lived with the appellant after being married and Verlee helped considerably in the housework before 1953. So the burden of housekeeping from and after 1951 could not have been very great. In 1951 the appellee and his two boys formed a partnership the boys each receiving a 20 percent interest in the

store and locker business and the appellee retaining a 60 percent interest therein. The property which he has left is, in the main, this 60 percent interest.

The apartments awarded to appellant herein would bring an income, as far as we can judge, taking into consideration necessary repairs from time to time, of approximately $2,000 per annum. If she invests the $10,000 awarded her by the court at 4 percent, that would bring in an additional income of $400 per annum. The care of the renting of the apartments should not take much of appellant's time. She is now 43 years of age, still a comparatively young woman. She should not expect to be able to spend her life in idleness. If she quits her excessive drinking of intoxicants, as she should, she should be able for many years to increase the above income by a considerable amount so as to enable her to live in comparative comfort. She has neither chick nor child dependent upon her. Appellee has three children. We do not think that we should be justified in depriving the latter of their expectancy to inherit from their father the property to the acquisition of which they devoted much of their time.

The majority of the court is in doubt as to the wisdom of modifying the award herein. They do not believe that a clear case has been presented to justify this court to do that. They believe that the trial court had a better opportunity to judge as to how the property of the parties should be divided and that its judgment in that connection should stand. The whole of the judgment of the trial court, accordingly, is affirmed.

Affirmed.