Grace M. CLAUSS, Appellant
(Defendant below),

v.

Robert A. CLAUSS, Appellee
(Plaintiff below).

No. 3770.

Supreme Court of Wyoming.

Oct. 7, 1969.

Thomas O. Miller and Ellen Crowley, Cheyenne, for appellant.

Harold M. Johnson, Rawlins, Jerry L. Angle and Charles R. Hallam, Phoenix, Ariz., for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Grace M. Clauss, defendant in an action for divorce brought by her husband, Robert A. Clauss, has appealed from a decree of divorce granted by the district court.

Appellant questions whether plaintiff had resided in Wyoming 60 days immediately preceding the filing of his complaint on July 21, 1967 and whether the court had jurisdiction to grant a divorce. She also questions whether grounds for divorce were sufficiently proved and claims plaintiff should have been denied a divorce because of mutual fault. A further assignment of error attacks the property settlement which the trial court made.

## Jurisdiction

Section 20–48, W.S.1957, prohibits the granting of a divorce unless the plaintiff "shall have resided in this state for sixty

days immediately preceding the time of filing the petition."

While plaintiff claims Rawlins, Wyoming, as his place of residence, it is undisputed that he had sold his ranch near Rawlins in 1966; that he did not after that time acquire any other home or place of abode in Wyoming; and that during the 60 days immediately prior to filing his petition he had spent no more than eight or ten days in this state.

■ Our first consideration is whether Mr. Clauss ever became a bona fide resident of Wyoming after he acquired the Pine Grove Ranch about 25 miles south of Rawlins, in 1962. In examining that question, it must be kept in mind the determination of facts is ordinarily left to the trial court. Dawson v. Dawson, 62 Wyo. 519, 177 P.2d 200, 203. And where the evidence is in conflict, we must assume the testimony of the successful party to be true, with all reasonable inferences to be drawn therefrom. Gill v. Gill, Wyo., 363 P.2d 86, 87.

We mention these well-recognized appellate principles because attorneys for appellant have repeatedly referred to record pages containing the testimony of their own client, in connection with their argument that plaintiff never became a resident of Wyoming. However, assuming the testimony of plaintiff to be true, we find ample evidence for the trial court to have concluded plaintiff became a bona fide resident of Wyoming after he acquired the Pine Grove Ranch in 1962. That is not to say whether we would or would not have reached the same conclusion if we had been the triers of fact.

■ Evidence favorable to plaintiff included testimony that, from November 1962 until approximately November 1966, Mr. Clauss worked at and operated his ranching operations in Wyoming; that his ranch had a modern home, bunkhouse, barns, sheds and normal ranch buildings; that the ranch was plaintiff's primary interest; that

plaintiff's ranching headquarters were at the Pine Grove Ranch; that the ranch was the home of Mr. Clauss; and that he intended it to be his home and domicile.

Also, there was evidence that during the period in question Mr. Clauss registered and voted in Wyoming; that he registered his motor vehicles in Wyoming; that he had a Wyoming driver's license; that he maintained bank accounts in Wyoming; that he filed his federal income tax returns in Wyoming; and that Wyoming was given as his place of residence in various documents, including property settlement agreements with his wife.

There is no claim that Mrs. Clauss ever lived at the Pine Grove Ranch. She testified she did make visits to the ranch—for a day, a week, or two weeks. She also testified plaintiff and defendant had an apartment at the Country Club Apartments in Phoenix from some time in 1962 to about May in 1964; that in the spring of 1964 the Clausses went to Buffalo, New York, to work on and sell some of Mr. Clauss' apartments; that during the summer of 1964 they spent some time at the ranch in Wyoming, some of the time in Phoenix, and some of the time on business trips to Mexico; that from January 1965 until May 1965 a home was rented at the Country Club Apartments in Phoenix; and that a move was made from there to the Colony Manor Trailer Park, where Mrs. Clauss claims the parties lived until Mr. Clauss closed the sale of his Wyoming ranch.

Mrs. Clauss claims she paid the rent on the Maryland Street home; and that Mr. Clauss paid the rent on the Country Club Apartments. We have no doubt Mr. Clauss spent substantial time in Phoenix with Mrs. Clauss during the time he owned and was operating his ranch in Wyoming. The evidence does not establish the relative portion of time spent in Phoenix and in Wyoming while the ranch was owned and operated. However, even if the evidence did disclose such, it would not conclusively prove wheth-

er plaintiff's residence was in Wyoming or whether it was moved from place to place in Phoenix during the period of 1962 to 1966.

■ Appellant contends the matrimonial domicile is the place where the parties have established their home and lived together as husband and wife, which she says was in Phoenix. However, as indicated in 27A C.J.S. Divorce § 71, p. 249, the doctrine of matrimonial domicile as the basis of jurisdiction to grant a divorce has been replaced by the view that "unitary domicile" or the domicile of either spouse is the basis of jurisdiction in such actions. See § 20–49, W. S.1957.

We find sufficient in the evidence to show, as we have previously indicated, that the trial court—as fact finder—was justified in concluding Mr. Clauss became a resident of Wyoming during the time he owned and operated the Pine Grove Ranch in Wyoming.

The remaining part of the residence question is relatively simple. If plaintiff was a bona fide resident of Wyoming when he sold his ranch in November 1966, has he acquired another domicile since? We do not say whether he has or has not. But, on the basis of the record before us, we can again say the trial court was warranted in finding that plaintiff had not, at the time of filing his complaint on July 21, 1967, acquired another or new domicile.

■ Not only did Mr. Clauss testify affirmatively that he still considered Wyoming his home and place of residence and that he had acquired no new domicile since leaving his ranch, but Mrs. Clauss virtually corroborates his contention in that regard.

In her brief she states, after November 21, 1966, Mr. Clauss surreptitiously and without justification abandoned his Arizona domicile and his matrimonial domicile and spent some time in Des Moines, Iowa; Buffalo, New York; Phoenix, Arizona; Mexico; Ashville, North Carolina; and St. Paul, Minnesota. Appellant then refers to diaries

which show Mr. Clauss stayed at the following list of places on the days indicated:

1967:

| | |
|---|---|
| May 21 | Des Moines, Iowa |
| May 22–23 | Cheyenne, Wyoming |
| 24 | Roswell, New Mexico |
| 25 | Tucson, Arizona |
| 26 | Phoenix, Arizona |
| 27 | Salina, Kansas |
| 28–30 | Des Moines, Iowa or Tucson, Arizona |
| June 1–2 | Tucson, Arizona |
| 3–4 | Roswell, New Mexico |
| 5 | St. Joseph, Missouri |
| 6–8 | Des Moines, Iowa |
| 9–13 | Roswell, New Mexico |
| 14 | Denver, Colorado |
| 15 | Tucson and Phoenix, Arizona |
| 16–21 | Roswell, New Mexico |
| 22 | El Paso, Texas |
| 23–25 | Roswell, New Mexico |
| 26–27 | Tucson, Arizona |
| 28–30 | Roswell, New Mexico. |

Attorneys for appellant seem to think the days referred to in the foregoing list of days are important because they are within the 60-day period immediately prior to the filing of plaintiff's complaint. The attorneys continue by pointing to a record of telephone calls made by Mr. Clauss and argue that such record "shows a continuing pattern of not living in Wyoming."

As we view the situation, the list of places where Mr. Clauss transacted business and stayed and made telephone calls only serves to corroborate his testimony that from November 1966 to July 21, 1967 he acquired no new home or domicile. It cannot be disputed that during this period he had no domicile in Phoenix. It has not been suggested by appellant or her attorneys that Mr. Clauss acquired a domicile at any of the places where he stayed between November 21, 1966 and July 21, 1967.

The court made it clear in Duxstad v. Duxstad, 17 Wyo. 411, 100 P. 112, 114, that

once a domicile is established, it is not relinquished until a new domicile is in fact established; and that in order to acquire a new domicile, a person must voluntarily disassociate himself from his present domicile, take up a permanent residence elsewhere, and intend to live and reside in the new residence for an indefinite period of time.

Without pretending to say whether the rule of the *Duxstad* case is still the best rule to follow, with people moving around more than they did when Duxstad was decided in 1909, we will content ourselves by saying the rule has not been challenged and no reason has been shown for modifying it. Moreover, it still seems to be generally recognized and followed in our system of jurisprudence. See Millar v. Millar, Wyo., 369 P.2d 207, 210–211; Restatement, Conflict of Laws, 1965 Supplement, § 23, p. 266; and 25 Am.Jur.2d Domicile, § 16, p. 13.

■ We are unable to say there was an absence of substantial evidence for the trial court to conclude Mr. Clauss had not acquired a new domicile after leaving his ranch in November 1966. On the theory, then, that plaintiff established a residence at the Pine Grove Ranch while he owned it, and that he had acquired no new domicile after selling the ranch, the trial court was entitled to find that plaintiff resided in Wyoming for 60 days immediately preceding the filing of his complaint. Such finding gave the court jurisdiction to try the action for divorce.

### Grounds for Divorce

■ The plaintiff sought a divorce on the ground of intolerable indignities. We have often said what constitutes sufficient evidence of intolerable indignities will depend upon the facts and circumstances of each particular case. Gill v. Gill, Wyo., 363 P.2d 86, 88. As stated in the *Gill* case, the offense is not ordinarily predicated on a single act but consists of a persistent or continuous course of conduct which has the ultimate effect of rendering cohabitation intolerable.

We bear in mind that an appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. Millar v. Millar, Wyo., 369 P.2d 207, 212. When the evidence is reviewed in this light, we find it quite sufficient to support the action of the trial court in granting a divorce.

■ According to the testimony and evidence offered by plaintiff, the defendant made the life of her husband miserable and his condition intolerable by doing, among other things, the following:

1. Without the knowledge of her husband, Mrs. Clauss filed for and obtained a decree of divorce in Mexico. In doing so, she used a forged acceptance of service and power of attorney. Subsequently, she used other fictitious papers and caused the Mexican court to set aside its decree. Counsel for both Mrs. Clauss and Mr. Clauss agree the purported Mexican divorce was void and a nullity.

2. The defendant created another fictitious instrument indicating falsely that her husband was indebted to her in the sum of $114,000. The defendant then brought a lawsuit against her husband, based on what plaintiff claims was this fictitious instrument. In connection with the suit she attached plaintiff's bank account and thereby caused him embarrassment.

3. After Mrs. Clauss had gotten her husband to sign blank deeds to be used for transactions in connection with the wife's separate properties, she created a false and fictitious deed for some of plaintiff's property, purporting to convey it to the wife's sister. Plaintiff testified this caused him great difficulty and embarrassment and much financial loss.

4. Without the right to do so, defendant charged long-distance telephone calls in excess of $2,800 against a credit card issued to one of plaintiff's companies; and this

conduct resulted in the company being unable to obtain telephone service.

5. Mrs. Clauss proposed to Mr. Clauss that she should collusively obtain a divorce in order that she could marry a wealthy elderly man, with the idea that after the elderly man died and she inherited his property she and plaintiff could remarry.

6. In connection with defendant's civil suit and attachment on the fraudulent claim of indebtedness, the defendant—without the right to do so—filed a false change of address with the post office at Rawlins, in order to have plaintiff's mail sent to her.

7. Mrs. Clauss continually, throughout the marriage, engaged in questionable and overreaching real estate transactions which caused plaintiff to be involved in numerous lawsuits. This, plaintiff claims, constituted a continuous source of embarrassment and harassment to him.

8. Throughout the marriage the defendant belittled plaintiff in the presence of others; and she continuously referred to him as "nothing but a damn plumber's son," connoting that he was inferior to her.

9. Defendant physically attacked plaintiff; on one occasion she broke the horn ring from the steering wheel of the car plaintiff was driving; she struck and scratched plaintiff's face with it; and she then removed the keys from the car and threw them away.

■ Some latitude for the exercise of discretion is permitted the trial court in determining the sufficiency of grounds for divorce, and its findings will stand in the absence of abuse of discretion. Brydon v. Brydon, Wyo., 365 P.2d 55, 56. We find no abuse of discretion in the case now before us.

### Recrimination

In saying plaintiff should have been denied a divorce because of his equal guilt, the defendant relies principally on her allegation that her husband was guilty of adultery. The evidence of his conduct, however, including that pertaining to adultery, was in conflict. According to the explanations of plaintiff, there would be reason to believe his conduct was not improper and that he was not guilty of the same misconduct charged against the defendant.

This would be especially true in view of the fact, as plaintiff claims, that his conduct has been questioned during the period of time when the Mexican divorce, according to his best knowledge, was in effect. If the trial court believed Mr. Clauss thought he was divorced on account of the Mexican divorce obtained by his wife, it would be entitled to take that into consideration in judging the husband's conduct.

■ What was said by this court in Boschetto v. Boschetto, 80 Wyo. 374, 343 P.2d 503, 505, can be applied here. The rule of recrimination was said not to be applicable in the *Boschetto* case because of contradictory evidence appearing in the record. The trial court had resolved the point in appellee's favor in *Boschetto,* and the trial court here has likewise resolved the point in appellee's favor. As said in *Boschetto,* this court cannot interfere.

■ We can say, as was also said in *Boschetto,* it is probably true that appellee's conduct was not altogether above reproach; we seldom find that to be true. However, it is not necessary for a complainant to be entirely blameless in order to be entitled to a divorce. We do not think we would be justified in interfering with the finding and judgment of the trial court awarding appellee a divorce, since that court is allowed some latitude for the exercise of discretion and in the absence of abuse of discretion its determination is final.

### Property Settlement

The marriage being considered in this case was somewhat different from most marriages, in that each party dealt extensively in properties, and each kept his or her property separate and apart from that belonging to the other. In the divorce judgment, the district court specifically found the property acquired by the parties during marriage is and has been regarded as the separate property of each spouse

and parties have kept separate accounts of all financial transactions between them.

Subsequent to separation of the parties and prior to the initiation of this divorce action, plaintiff and defendant entered into two written agreements by which they settled their respective property rights, financial disputes and obligations between themselves. The trail court found and decreed that these agreements constitute a true, fair and equitable distribution and division of the parties' property. It therefore approved, confirmed and adopted such agreements as a property settlement for the divorce.

In Beard v. Beard, Wyo., 368 P.2d 953, 955, we reaffirmed this court's previous pronouncement that agreements between husband and wife concerning division of property and custody of children are favored by the courts.

Appellant argues the agreements "are not property settlements." She says she was overreached by her husband who took unfair advantage of her. The evidence, however, does not support such a contention. On the contrary, it shows the wife voluntarily and intelligently signed the agreements with adequate legal advice. Moreover, we fail to find anything in the agreements which is unfair or unjust to appellant—especially when conflicting evidence pertaining to transactions is construed in the light most favorable to appellee.

One of the agreements specified:

"By this agreement, the parties intend to conclude and determine all financial obligations and interests and all property rights between them."

In the event the agreements did not conclude all property rights, however, the divorce decree provided, with reference to all other property and financial rights of the parties other than those contained in the agreements, they are to be the sole and separate property of the respective parties in whose name, possession or control such rights or property is now reposed, and the other party shall have no right, title, claim or demand therein.

We consider it immaterial whether the agreements we have been speaking of were entered into as and for a property settlement in contemplation of divorce. The trial court was amply justified, on the basis of the evidence before it, in finding as it did find that the terms of the two agreements set forth a fair and equitable division of property between the parties, with the added provision that any property not covered in the agreements would be the property of the spouse in whose name, possession or control such property was reposed.

Attorneys for appellant have argued that the trial court erred in several respects by adopting the agreements of the parties and making such agreements the basis of the divorce property settlement. We fail, however, to find any merit in any of these assignments; and, in particular, we fail to find in connection with such assignments any showing that appellant has or will be prejudiced in any real or material manner.

Finally, appellant suggests the facts do not support the trial court's findings that the appellant has ample property and money with which to pay her attorney fees, costs of suit and her support. The trouble is that from the beginning to the end of appellant's presentation on appeal she has not been willing to accept the fact that her testimony and version of facts do not necessarily control.

We illustrate this by pointing out the plaintiff claims Mrs. Clauss has properties worth three million dollars and an annual income from those properties of $95,000; whereas the value of his own properties is around $300,000. We do not say the plaintiff is correct in his representation of value. Suffice it to say there was ample evidence of property and values for the trial court to conclude that appellant could well afford to pay her own attorney fees and costs of suit, and that she should do so.

We find no errors in the divorce proceedings or the judgment of the district court which would justify a reversal or change of the trial court's decree.

Affirmed.